FUR INFORMATION AND FASHION
COUNCIL, INC., et al., Plaintiffs-
Appellants,

v.

E. F. TIMME & SON, INC.,
Defendant-Appellee.

No. 970, Docket 73-2687.

United States Court of Appeals,
Second Circuit.

Argued May 29, 1974.

Decided July 31, 1974.

Certiorari Denied Nov. 18, 1974.
See 95 S.Ct. 498.

Oliver P. Howes, Jr., New York City (Nims, Howes, Collison & Isner, New York City, and Kenneth R. Umans, New York City, of counsel), for plaintiffs-appellants.

Charles L. Trowbridge, New York City (Gifford, Woody, Carter & Hays, New York City, and Bondy & Schloss, New York City, and David E. Nierenberg, New York City, of counsel), for defendant-appellee.

Before MOORE and FEINBERG, Circuit Judges, and WEINFELD,* District Judge.

MOORE, Circuit Judge:

Plaintiffs[1] appeal from a final judgment and order dismissing their complaint and denying their motion for a preliminary injunction.[2] There being no diversity of citizenship, jurisdiction was asserted under the Trademark Act of 1946 (the so-called Lanham Act), 15 U.S.C. § 1051 et seq., Section 43(a), 15 U.S.C. § 1125(a), of which contains the basis of, and prerequisites for, jurisdiction. In essence that section provides that any person who uses in connection with any goods any false representation, including words tending to falsely represent the same (such goods being entered into commerce) shall be liable in a civil action to any person damaged or likely to be damaged by "any such false description or representation."[3]

The complaint stated the suit to be "of a civil nature for unfair competition, and commercial disparagement." The defendant, E. F. Timme & Son, Inc., a manufacturer "of synthetic textile fabrics, some of which simulate in appearance the fur of wild and farm raised animals but which do not consist of or contain animal fur * * *" is charged with having "broadcast nationally, advertisements of defendant's said goods which carried the false implication that buying defendant's products would save tigers and leopards from being killed for use of their fur in garments despite defendant's knowledge that the Endangered Species Conservation Act, 16 U.S.C. §§ 668a–668c [668aa–668cc], protects tigers and leopards from being killed for such purposes." (Complaint, par. 22). Additionally, plaintiffs assert an implication from these ads that "plaintiffs and all those similarly situated are responsible for the illegal killing of said animals for commercial purposes." (Complaint, par. 23). To bring the union employees into the "similarly situated" category, the complaint charges that "there will be a general loss of union jobs and depression of wages throughout the commercial fur industry" (Complaint, par. 26), i. e., if sales of the fur manufacturing industry are reduced.

---

* Of the Southern District of New York, sitting by designation.

1. Plaintiffs include fur garment manufacturers, wholesalers, retailers, dealers and labor unions, and trade associations in the American fur industry.

2. The hearing on the preliminary injunction motion and the trial on the merits were consolidated by the trial court and resulted in the judgment entered on September 21, 1973.

3. § 1125. False designations of origin and false descriptions forbidden

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

The two television ads complained of are described in the trial court's opinion:

> The Court [the District Court] viewed these two Ads. They are produced in color. The fact that 40% of the New York market continues to view television in black and white with the significant motivation for the choice of leopard (with contrasting spots) and tiger (with stripes) over a monochromatic fur.
>
> The Leopard Ad, sixty seconds in length, begins with color scenes of animals in their natural habitat, including hippopotami swimming, antelopes running in a pack and a leopard with her cub.
>
> The leopard is then viewed through what are apparently the sights of a large firearm. The scene fades. A gunshot is heard. The scene shifts to a cocktail party ostensibly in the United States. A fashionably dressed woman admires the leopard coat of another. The voice of an unseen male speaks:
>
> > Man's Voice: There are too many women who want leopard coats in the world and too few leopards. Timme makes fake furs every bit as beautiful as the originals. We think people should wear our fake fur and leave the leopard coats where they belong, on leopards.
> >
> > Woman: Buy me one before the jungle runs out of them.
> >
> > Man's Voice: Timme. Makers of Timmetation Fake Furs, and fabrics for just about every thing else.
>
> This is followed by a picture of examples of various other Timme fabrics used for upholstery and apparel.
>
> The Tiger Ad, sixty seconds long, is to the same effect. A lovely girl appears in color next to a friendly and affectionate tiger. She says:
>
> > He [the tiger] is wearing a real tiger coat. I'm wearing a fake fur by Timme. Although it's virtually impossible to tell the difference, a Timme fur costs far less money.

> > Perhaps even more important, it didn't cost a tiger his life. The beauty of a Timme fake is that you can wear a beautiful coat and he [the tiger] can keep his.
>
> This is followed by the voice of an unseen male, naming Timme as a maker of fake furs and fabrics.

The trial judge then found:

> Words are inadequate to describe the mordant effect of these Ads on the viewer. In the Leopard Ad, a woman of fashion makes an insensitive reference to the fact that leopards are threatened with extinction, and requests her escort (not shown on camera) to buy her one before it is too late. Her self-indulgent attitude and frivolous demeanor contrasts directly and unfavorably with the words and tone of the ecologist-announcer.
>
> Persons who would wear natural tiger or leopard coats [and, by extension, all who would wear natural fur] are portrayed as anti-social, anti-environment, or otherwise in a bad light. The two-fold innuendo exists: (1) by selecting Timmetation fur over natural fur, a customer will save money and save the life of a fur bearing animal, and (2) that the American fur industry is responsible for the killing of endangered tigers and leopards [and, by extension, are criminals].

Notwithstanding these findings, the trial judge held that the complaint did not state a cause of action under Section 43(a) because the misrepresentations did not involve an inherent quality or false description of the defendant's own products. Alternatively, the judge ruled that the ads were protected by the First Amendment and that, in any event, the equities did not justify the award of preliminary injunctive relief.

■■ At the outset, this court must observe that it disagrees with the trial court's findings of false implications and innuendoes. Since these findings consist primarily of inferences drawn from viewing the ads and since this court

has also viewed them, the findings are subject not to the "clearly erroneous" test but to the stricter standard of review applicable to interpretations of documentary evidence. *See, e. g.,* United States ex rel. Lasky v. LaValle, 472 F. 2d 960, 963 (2d Cir. 1973); Severi v. Seneca Coal & Iron Corp., 381 F.2d 482, 488 (2d Cir. 1967); Orvis v. Higgins, 180 F.2d 537, 539 (2d Cir.), cert. denied, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950). Under this standard, the trial court's findings are erroneous and, accordingly, we set them aside. We are convinced that these ads carry no implications, false or otherwise, that plaintiffs, including their union employees, go about the country illegally killing tigers and leopards for commercial purposes. In fact, the court is prepared to take judicial notice that the numbers of tigers and leopards in this country is limited to zoological gardens and itinerant circuses. Equally unrealistic is the thought that a potential purchaser of one of defendant's imitation leopard coats makes the purchase with the thought that she (probably) is saving a leopard from being killed. To the contrary she knows that no real leopards are available—hence, if her desires compel her to appear in spots, she must resort to such imitation as is available. Furthermore, a cloth imitation of any fur is far less expensive and many purchasers for this reason are willing to compromise for less than the "real thing."

The ads seem to this court to do no more than to tout, in a rather pointed fashion, the advantages of imitation over natural furs: The imitation furs resemble the real thing, are less expensive, and can be purchased without necessitating the death of a live animal. These representations are either true or acceptable puffing. The fact that the particular animals pictured in the ads are endangered species whose skins may not be bought in this country seems beside the point. The impact of the ads on the real fur industry would probably not have been lessened if defendant had added a sentence of narrative indicating that the federal government, abhorring the wanton destruction of rare animals, had prohibited the importation of real tiger and leopard skins.

By one of the many miracles of modern science, fibers are produced from natural gas which can be fabricated into a textile material somewhat resembling fur. This textile material, in turn, can be treated so as to produce cloth having the appearance of the skins of tigers and leopards. Defendant has also capitalized on a play on words by merging its name "Timme" with "imitation" and using "Timmetation" as its name for its "fake furs." To the contrary of false representation, there is complete, truthful disclosure concerning defendant's products. The innuendoes sought to be drawn by plaintiffs from the other comments in the TV ads regarding tigers and leopards are without foundation.

■ Returning to Section 43(a), the only basis for jurisdiction, the statute specifically requires a "false description or representation" used "in connection with any goods or services." Since there are no false descriptions or representations concerning defendant's goods, plaintiffs take umbrage at the trial court's limitation of the statute to representations concerning "inherent quality or characteristic of defendant's product," claiming that such an interpretation is unduly restrictive. We agree with the trial court's construction of Section 43(a), namely, that it was intended to apply only to misrepresentations relating to the inherent qualities of defendant's own goods. *See* Samson Crane Co. v. Union Nat'l Sales, Inc., 87 F.Supp. 218, 221–222 (D. Mass.1949), aff'd on opinion below, 180 F.2d 896 (1st Cir. 1950); Bernard Foods Industries, Inc. v. Dietene Co., 415 F.2d 1279, 1282–1284 (7th Cir. 1969), cert. denied, 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970).

■ From a reading of the statute itself, it seems quite obvious that its purpose was to prevent false descriptions of

the goods being offered. Unfair competition, and commercial disparagement, except as they might be incidental to false representation, are not embraced within the statute. And in enacting Section 43(a), Congress could hardly have intended to flood the federal courts with claims that an advertiser had misrepresented the social desirability of its products or disparaged the ecological sensitivity of its competitors.

In final analysis, plaintiffs' real grievance is the fear (which they claim is already an actuality) that in this ever-more-increasing environmentally conscious age, there is, will, or may be a popular revulsion against the killing of animals to provide for personal adornment. Whether this will eventuate is not for court speculation; it will depend upon the temper of the people as expressed through their legislative representatives. To the true environmentalist, the killing of any animal to make a fur garment may be repulsive. Plaintiffs themselves introduced ten letters from the public addressed to "The American Fur Industry" strongly disapproving of such killing, all apparently in reaction to a specific ad by the American Fur Industry promoting fur coats made of muskrat, Russian raccoon, Alaska seal and Norwegian Bluefox. Tigers and leopards were not the subject of the letters but lynx, mink, fox and sable.

We have in this country an enactment with respect to tigers and leopards, 16 U.S.C. secs. 668aa–668cc, undoubtedly an attempt by our own laws to discourage slaughter in foreign lands. In former days we have had legislation to prevent the slaughter of birds about to become extinct whose plumage was coveted to adorn certain millinery headpieces when such were in vogue. More recently an entire industry (cigarettes) has been affected by restrictive legislation. The W.C.T.U. campaigned for decades not only to disparage but to wipe out, if possible, the hard liquor industry. Their dire prognostications of the deleterious effect of alcohol on the human race must have appeared—at least to the liquor industry and certain enthusiastic consumers of its products—to have been false. What additional animals or articles may be added to the proscribed lists will depend upon popular will. For the moment it is enough to say that the trial court's decision not to grant a preliminary injunction and to dismiss the complaint was wholly justified upon the law and the facts.

■ Since the second cause of action (tortious conduct under New York law) is concededly "pendent", the trial court properly allowed it to fall when its support was removed. We agree with his conclusion that such action, if any, as may exist, should be left for resolution by the state court, namely, the question "whether, under state law, a justiciable issue is presented."

In view of our decision that defendant's advertising of its products contained no false representations cognizable under Section 43(a), it is unnecessary to pass upon defendant's First Amendment arguments.

Judgment and order affirmed.