VIDAL SASSOON, INC., Appellee,

v.

BRISTOL–MYERS COMPANY,
Appellant.

No. 226, Docket 81–7483.

United States Court of Appeals,
Second Circuit.

Argued Sept. 18, 1981.

Decided Oct. 7, 1981.

Gilbert H. Weil, Weil, Gutman & Davis, New York City, for appellant.

Richard L. Bond, Marshall, Bratter, Greene, Allison & Tucker, New York City, for appellee.

Before LUMBARD and KAUFMAN, Circuit Judges, and PIERCE,* District Judge.

IRVING R. KAUFMAN, Circuit Judge:

One of the most delicate tasks a court faces is the application of the legislative mandate of a prior generation to novel circumstances created by a culture grown more complex. In the instant case, we must determine whether statutory language derived from a 1920 prohibition against false advertising embraces misrepresentations regarding the results and methods of tests purporting to reflect consumer preferences for one named brand over another, a relatively new development in the burgeoning advertising and marketing fields. The district court preliminarily enjoined the dissemination of the shampoo advertisements at issue. Because we believe that the Lanham Trademark Act addresses the misrepresentations alleged here, relating to a consumer preference test, we affirm the court's order.

I

A brief review of the facts will facilitate an understanding of the legal issues raised on this appeal. In the spring of 1980, appellant Bristol-Myers Co. ("Bristol"), a pharmaceutical manufacturer, decided to wage an aggressive, new advertising campaign on behalf of its shampoo product, "Body on Tap," so named because of its high beer content. Accordingly, Bristol began in June to broadcast on national televi-

* Of the United States District Court for the Southern District of New York, sitting by designation.

sion a commercial "starring" the high fashion model Cristina Ferrare. The commercial depicts a turbaned Miss Ferrare, apparently fresh from shampooing her hair, holding a bottle of Body on Tap. She claims: "[I]n shampoo tests with over nine hundred women like me, Body on Tap got higher ratings than Prell for body. Higher than Flex for conditioning. Higher than Sassoon for strong, healthy looking hair." As is well known to the consuming public, Prell, Flex, and Sassoon are shampoo competitors of Body on Tap. Sassoon is the product of appellee Vidal Sassoon, Inc. ("Sassoon"). As Miss Ferrare refers in turn to each of the shampoos, the product is flashed on the television screen. The commercial ends as Miss Ferrare, now brushing her dry hair, states: "Now I use Body on Tap for fuller body and for clean, strong, beautifully conditioned hair. Body on Tap. It's a great shampoo."

The "Ferrare-900 Women" commercial, although the prototype, was only the first in a series developed for a complex sales campaign. Bristol played variations on the same theme in newspaper advertisements and in brochures which it intended to mail to over ten million households.[1]

The shampoo tests mentioned in all the advertisements were conducted for Bristol in 1978 and 1980 by an independent market research firm, Marketing Information Systems, Inc. ("MISI"). It is undisputed that 900 women did not, after trying both shampoos, make product-to-product comparisons between Body on Tap and Sassoon, or, for that matter, between Body on Tap and any of the other shampoos mentioned in the advertisements. Rather, groups of approximately 200 women,[2] in what the advertising trade terms "blind monadic testing," each tested *one* shampoo and rated it on a qualitative scale ("outstanding," "excellent," "very good," "good," "fair," or "poor") with respect to 27 attributes, such as body and conditioning. Thus, no woman tried more than one shampoo. The data for an attribute of a particular shampoo were combined by category of qualitative rating, so that a percentage figure for each qualitative rating could be derived. The "outstanding" and "excellent" ratings were then added, and the lower four ratings were discarded. Following this procedure, MISI determined that 36% of the women who tested Body on Tap found it "outstanding" or "excellent" with relation to "strong, healthy looking hair," whereas only 24% of the separate group of women who tested Sassoon gave it such ratings. These results are the basis of Bristol's advertising claim that the women preferred Body on Tap to Sassoon. When the "very good" and "good" ratings are combined with the "outstanding" and "excellent" ratings, however, there is only a statistically insignificant difference of 1% between the ratings of the two shampoos respecting "strong, healthy looking hair."[3]

The propriety of blind monadic testing for the purpose of comparative advertising

1. The other advertisements are: a television commercial identical to the "Ferrare-900 Women" commercial with the addition of a reference to Body on Tap Conditioner; two newspaper advertisements that appeared on August 27, 1980 in *The Philadelphia Inquirer* and *The Philadelphia Bulletin* and which proclaim, "[W]hen 900 women across the country were asked to rate Shampoos—*Body on Tap* got higher ratings than Prell for *body* . . . Flex for *conditioning* . . . Sassoon for *healthy-looking hair!*"; and a direct mail brochure which represents, "[W]hen groups of women were asked to test leading shampoos Beer-enriched Body on Tap . . . scored higher than Sassoon for healthy-looking hair . . . hair that is fuller, thicker, and silkier."

2. The 1978 tests did not involve Sassoon. In May of 1978, 305 women tried Body on Tap, 197 tried Breck, 203 tried Flex, 202 tried Johnson & Johnson Baby, and 200 tried Prell. In June and July of 1978, 214 tried Honey, 201 tried Herbal Essence, and 204 tried Agree. In the 1980 test, 207 tried Body on Tap, 205 tried Sassoon, and 209 tried Agree.

3. Although the women did not test more than one shampoo, they were asked to rate their regular brand of shampoo for the same attributes as the test product. Of the 22 women who stated that either Body on Tap or Sassoon was their regular brand and who sampled the other brand as their "test product," 18 rated Sassoon higher than or equal to Body on Tap with regard to "strong, healthy looking hair."

claims is in some doubt. Dr. Edwin N. Berdy, President of MISI, stated by deposition that such testing is typically employed "where one would like an absolute response to the product ... without reference to another specific product." In his affidavit, Dr. Ben Kajioka, Sassoon's Vice President of Research and Development, stated that blind monadic testing cannot support comparative advertising claims. And indeed, Bristol initially conducted the 1978 tests not with the intention of using their results in comparative advertising, but to determine consumer reaction to the recent national introduction of Body on Tap. On the other hand, Dr. Berdy testified that blind monadic testing had been used in connection with comparative advertising in the past.

That 900 "women like" Cristina Ferrare had tried the shampoos might suggest, at the very least, that 900 adult women participated in the test. In actuality, approximately one-third of the "women" were ages 13–18. This fact is noteworthy in light of the testimony of Alfred Lowman, the advertising executive who created the "Ferrare-900 Women" campaign, that the commercial was designed to attract a larger portion of the adult women's shampoo market to Body on Tap. Sassoon had always fared well among adult women, whereas Body on Tap had appealed disproportionately to teenagers. Bristol's marketing studies have revealed that the advertisements were successful in increasing usage and awareness of Body on Tap among adult women.

There is also some question concerning the methodology of the tests. Dr. Kajioka stated that Bristol instructed the women who tested Sassoon to use it contrary to Sassoon's own instructions. Bristol also allowed the women to use other brands while they were testing Sassoon. Thus, the women's responses may not accurately reflect their reaction to Sassoon as distinct from other shampoos.

In September, 1980 Sassoon commenced this action, claiming that the several "Ferrare-900 Women" advertisements violated the prohibition of § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), against false and misleading advertising.[4] Sassoon charged that Bristol had made false and misleading representations since, *inter alia*: (a) only about 200 women, not "over 900 women," tested each shampoo; (b) the women tested only one shampoo, without making product-to-product comparisons; (c) only two-thirds of the test participants were adult women; (d) the advertisements failed to portray the test results accurately, because Bristol used only the top two qualitative rating categories; and (e) the methodology of the tests was flawed. Sassoon sought damages and a permanent injunction forbidding the broadcast or publication of the advertisements.

Following pretrial discovery Sassoon requested a preliminary injunction prohibiting the dissemination of the advertisements. Although the parties waived an evidentiary hearing, both submitted deposition testimony and affidavits.

Sassoon submitted, together with other evidence, a consumer perception study prepared for it by ASI Market Research, Inc. ("ASI"). Participants in the ASI test were asked to view the "Ferrare-900 Women" commercial twice, following a screening of entertainment and other advertisement materials. Members of the test group[5] were then asked to answer one multiple-choice and three open-ended questions. The multiple-choice question was "How many different brands mentioned in the commercial

---

4. Section 43(a) provides, in pertinent part:

   Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

5. Members of the test group were the 635 individuals in the viewing audience who stated that they shampoo their hair at home at least once a week.

did *each* of the 900 women try?" (emphasis in original). A choice of five responses followed—"one," "two," "three," "four," or "five or more." Ninety-five percent of those who answered the question said that each of the 900 women had tried two or more brands.[6] Answering the open-ended question, "This commercial described the results of shampoo tests. What did these tests show?", 62% of the participants indicated that the tests showed that Body on Tap was competitively superior, either in a general way (38%), or as specifically compared with one or more other brands (24%). In answer to another question, 53% stated that the primary message of the commercial was Body on Tap's competitive superiority.

On the basis of the evidence submitted to him, Judge Stewart concluded that Sassoon had demonstrated a probability of success on the merits and a possibility of irreparable injury if the dissemination of the advertisements did not cease. Accordingly, he granted Sassoon's motion for a preliminary injunction.[7]

## II

■ Turning now to the legal issues, we conclude that Judge Stewart properly ruled that Sassoon had met its burden for the issuance of a preliminary injunction by showing "probable success on the merits and possible irreparable injury," *Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973).[8] Viewing the "entire mosaic" of the advertisements rather than "each tile separately," *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963), we find that Judge Stewart did not err, nor did he abuse his discretion,[9] see *Triebwasser & Katz v. AT&T*, 535 F.2d 1356, 1358 (2d Cir. 1976), in concluding that the advertisements were ambiguous and misleading in violation of § 43(a) of the Lanham Act.

■ We have previously endorsed the ASI format as probative of the meaning consumers derive from commercial advertising. *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 167–69, 167 n.15 (2d Cir. 1978). The results of the test ASI conducted for Sassoon suggest that most potential purchasers would incorrectly believe that the 900 women in the MISI survey made product-to-product comparisons among two or more shampoos. The study also presents evidence that con-

---

**6.** According to the deposition testimony of Alfred Lowman, the Department of Broadcasting Standards & Practices of American Broadcasting Co., Inc. ("ABC") protested the television commercial. ABC claimed that it was potentially deceptive to consumers because it conveyed the incorrect impression that over 900 women had tried all the shampoos. The other networks did not complain, and ABC cleared the commercial, subject to rescission of clearance if "responsible complaint" was made.

**7.** Specifically, Judge Stewart enjoined Bristol "from disseminating statements, such as those contained in the Cristina-900 Women Commercials and the direct mail advertisements, which contain the above-mentioned ambiguous and misleading statements concerning the shampoo tests and the comparative superiority of Body on Tap Shampoo."

**8.** Bristol argues that, because its advertisements are supposedly protected by the First Amendment to the Constitution, Judge Stewart should have imposed a higher burden on Sassoon. This argument is without merit. Misleading commercial speech is beyond the protective reach of the First Amendment, *Central*

*Hudson Gas & Electric Co. v. Public Service Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). The Lanham Act's content-neutral prohibition of false and misleading advertising does not arouse First Amendment concerns that justify alteration of the normal standard for preliminary injunctive relief. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206 (2d Cir. 1979).

**9.** Because the parties waived an evidentiary hearing below, appellant would have us undertake a review broader than an inquiry into whether Judge Stewart abused his discretion. *See Dopp v. Franklin Nat'l Bank*, 461 F.2d 873, 879 (2d Cir. 1972). We decline to do so. Since the findings and the reasoning of the trial court are "specific, detailed and clearly articulated," and the meaning of documented consumer tests, not the credibility of live witnesses, is the essential issue in the case, the lack of an evidentiary hearing does not alter the standard of review. *New York v. Nuclear Regulatory Comm'n*, 550 F.2d 745, 753 (2d Cir. 1977).

sumers, after viewing the "Ferrare-900 Women" television commercial, would assume that Body on Tap was competitively superior [10] when a combination of qualitative rating categories different from the one used by Bristol would yield no more than a showing of virtual competitive parity between Body on Tap and Sassoon. Whether or not the statements made in the advertisements are literally true, § 43(a) of the Lanham Act encompasses more than blatant falsehoods. It embraces "innuendo, indirect intimations, and ambiguous suggestions" evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement. *American Home Products Corp. v. Johnson & Johnson, supra,* 577 F.2d at 165. Based largely on his evaluation of the ASI test results, Judge Stewart properly concluded, therefore, that Sassoon had made a showing of a probable § 43(a) violation. We also note that at least one statement made by Bristol, that 900 "women like" Cristina Ferrare tried the shampoo (when in fact only two-thirds of the sample were adult women), appears to be facially false, and may therefore be enjoined without regard to consumer reaction. *Id.*

Bristol asserts that the misrepresentations alleged by Sassoon are only misstatements concerning the test results and the manner in which the tests were conducted, not the "inherent quality," *Fur Information & Fashion Council, Inc. v. E. F. Timme & Son, Inc.,* 501 F.2d 1048, 1051 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974), of Body on Tap. Misleading statements regarding consumer test methodology, Bristol argues, do not fall within § 43(a). We agree that Bristol has not in so many words falsely described the quality of Body on Tap. It has not, to give a hypothetical example, baldly stated that the shampoo smells like roses when it in fact does not. The inaccuracies alleged concern the number and age of the women in the tests, how the comparisons were made, and how the results were tabulated. After a careful review of cases interpreting the Lanham Act and its legislative history, however, we are persuaded that § 43(a) does prohibit the misrepresentations alleged here.

The language of § 43(a), enacted in 1946, *see* 1946 U.S.Code Cong. Service, at 1274, is substantially the same as the language of its predecessor, the Act of March 19, 1920, c. 104, § 3, 41 Stat. 534. Nothing in the history of either the 1920 Act or the 1946 amendments speaks to consumer testing. This silence is hardly surprising, given that the growth in consumer testing for comparative advertising claims occurred only with the advent of television and increasing sophistication of marketing techniques during the 1950's and 1960's.

One of the principal purposes of the 1946 revisions of the Lanham Act was "[t]o modernize the trade-mark statutes so that they will conform to legitimate present-day business practice." S.Rep. No. 1333, 79th Cong., 2d Sess. (1946), *reprinted in* 1946 U.S.Code Cong. Service, at 1276. We are therefore reluctant to accord the language of § 43(a) a cramped construction, lest rapid advances in advertising and marketing methods outpace technical revisions in statutory language and finally defeat the clear purpose of Congress in protecting the consumer. The language of § 43(a) is indeed very broad: "Any person who shall ... use *in connection with* any goods or services ... any false description or representation ...

---

**10.** Sassoon need not have shown cognizance of Body on Tap's alleged superiority over Sassoon specifically. A general perception of competitive superiority was sufficient. In *American Home Products Corp. v. Johnson & Johnson,* 436 F.Supp. 785, 793–96 (S.D.N.Y.1977), *aff'd* 577 F.2d 160 (2d Cir. 1978), American Home Products advertised its product, Anacin, as superior to Tylenol and Datril. Proof of consumer perception of Anacin's general superiority to its competitors, without evidence of discern-

ment of Anacin's superiority over Tylenol specifically, was sufficient to establish that American Home Products had misrepresented Anacin in its comparison with Tylenol. *See also Bernard Food Industries, Inc. v. Dietene Co.,* 415 F.2d 1279, 1283 (7th Cir. 1969), *cert. denied,* 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970) (gravamen of § 43(a) violation is misrepresentation of the defendant's own goods, not plaintiff's).

shall be liable" (emphasis supplied). Certainly the alleged untruths concerning the MISI tests were at least "in connection with" Body on Tap, and, as the ASI study reveals, they quite probably created the impression that Body on Tap was superior. Judge Stewart could appropriately find, moreover, that this view was probably false because, if the qualitative rating categories were combined in a different manner, there would be no significant statistical difference between Sassoon and Body on Tap. While we recognize that § 43(a) encompasses only misrepresentations with reference to the " 'inherent quality or characteristic' " of defendant's product, see Fur Information & Fashion Council, Inc. y. E. F. Timme & Son, Inc., supra, 501 F.2d at 1051, we are nevertheless convinced that Judge Stewart was correct in concluding that Sassoon would probably succeed in showing that the intent and total effect of the advertisements were to lead consumers into believing that Body on Tap was competitively superior, surely a representation regarding its "inherent quality." [11] See R. J. Reynolds Tobacco Co. v. Loew's Theatres, Inc., 511 F.Supp. 867 (S.D.N.Y.1980) (bias in defendant's consumer test caused deception as to the quality of defendant's goods and thereby established action pursuant to § 43(a)).

■ In a case like this, where many of the qualities of a product (such as "body") are not susceptible to objective measurement, it is difficult to see how the manufacturer can advertise its product's "quality" more effectively than through the dissemination of the results of consumer preference studies. In such instances, the medium of the consumer test truly becomes the message of inherent superiority. We do not hold that every misrepresentation concerning consumer test results or methodology can result in liability pursuant to § 43(a). But where depictions of consumer test results or methodology are so significantly misleading that the reasonably intelligent consumer would be deceived about the product's inherent quality or characteristics, an action under § 43(a) may lie.

■ Finally, we believe that Sassoon made an adequate showing of the possibility of irreparable injury. Although the likelihood of injury and causation cannot be presumed, Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 190 (2d Cir. 1980), Judge Stewart properly concluded that Sassoon had offered "proof providing a reasonable basis for the belief that . . . [it] is likely to be damaged as a result of the false advertising." Id. Sassoon and Body on Tap compete in the same market, and it is quite likely that the apparently effective suggestions of competitive superiority, if repeatedly communicated to consumers, would eventually result in loss of sales to Sassoon. McNeilab, Inc. v. American Home Products Corp., 501 F.Supp. 517, 530 (S.D.N.Y.1980). Although Sassoon offered no evidence of actual sales loss directly traceable to the alleged misrepresentations, proof of diversion of sales is not required for an injunction to issue pursuant to § 43(a). See Johnson & Johnson v. Carter-Wallace, Inc., supra, 631 F.2d at 192. We also note that Bristol's own "Shampoo Tracking Study" reveals that awareness and purchases of Body on Tap among women ages 18–34 increased significantly shortly after the commencement of the "Ferrare-900 Women" advertising campaign. Judge Stewart properly inferred that Sassoon might be

---

11. Bristol cites several cases in which the district court found that a claim was not stated under § 43(a). These are all clearly distinguishable. In none of the cases was there a misrepresentation as to the quality or a characteristic of defendant's own goods. In Fur Information & Fashion Council, Inc. v. E. F. Timme & Son, Inc., 501 F.2d 1048 (2d Cir.), cert. denied, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974), defendant, a synthetic fabric manufacturer, falsely represented that buying its products would prevent the killing of tigers and leopards for use of their fur in garments. In Bernard Food Industries, Inc. v. Dietene Co., supra, defendant misrepresented only the quality of plaintiff's product, without making false statements about its own product. In Samson Crane Co. v. Union Nat'l Sales, 87 F.Supp. 218 (D.Mass.1949), aff'd per curiam, 180 F.2d 896 (1st Cir. 1950), defendant falsely represented that its store was being operated for the financial benefit of a labor union, without making any representations as to the quality of the goods carried.

damaged if the advertisements did not cease.

Accordingly, we affirm the order of the district court.