GRANT AIRMASS
CORPORATION, Plaintiff,

v.

GAYMAR INDUSTRIES, INC. and
Calspan Corporation, Defendants.

No. 85 Civ. 2712–CLB.

United States District Court,
S.D. New York.

Oct. 20, 1986.

1508

Ronald St. Onge, St. Onge Steward Johnston & Reens, Stamford, Conn., for plaintiff.

David Steckler, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for Gaymar.

Howard W. Segal, Segal & Meltzer, New York City, for Calspan.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

### INTRODUCTION

Plaintiff Grant filed the original complaint in this action in April 1985 alleging product disparagement, defamation of a corporation, libel, slander of goods, negligence, injury to business reputation, unjust enrichment, and unfair competition under federal and state law. This Court has dismissed for failure to state a claim all but Grant's claims under the Lanham Act § 43(a) and the New York General Business Law § 350. *See* Memorandum and Order, June 25, 1985. After extensive pretrial discovery, defendants have served three separate motions for summary judgment pursuant to Rule 56, F.R.Civ.P.: (1) Calspan's motion for summary judgment against Grant, (2) Gaymar's motion for summary judgment against Grant, and (3) Gaymar's motion for partial summary judgment dismissing Calspan's cross-claim for attorneys' fees.

Plaintiff Grant and defendant Gaymar are competitors in the field of pressure sore prevention products, that is, air mattresses and mattress pads to prevent bedsores. Grant claims that Gaymar engaged in a scheme to disparage the products of Grant. Grant further claims that, as part of Gaymar's scheme, it commissioned defendant Calspan, a research firm, to undertake a false and misleading comparative study of pressure sore prevention products, such study to be used in Gaymar's advertising literature. It is Grant's contention, that the publication of four pieces of product literature pursuant to this scheme violates prohibitions in the Lanham Act and the New York General Business Law against unfair competition by means of false advertising. As the same operative facts establish a violation of both the Lanham Act § 43(a) and the General Business Law § 350, the following discussion applies equally to both claims put forth by Grant.

Defendants deny liability claiming that the comparative study and the advertising brochures were not deceptive and that, in any case, Grant has not demonstrated injury to its business as a result of such literature. In addition, Calspan has cross-claimed against Gaymar for indemnity and attorneys' fees.

### BACKGROUND

The record in this case shows that it is widely believed that bedsores or decubitus ulcers, which can be fatal, are caused by the unrelieved pressure on body tissues that accompanies the prolonged immobility of persons receiving bedcare in hospital, nursing home and other health care environments. The goal of pressure sore prevention products such as those sold by Grant and Gaymar is to relieve pressure on body tissues at contact points with the mattress to below the critical level of 32 mm.

Hg. There are two main types of pressure sore prevention products: (1) dynamic, such as alternating pressure pad systems that use air pressure pumps to inflate and deflate the mattress in cycles; and (2) static, such as air or foam mattresses and bed cushions. Consumers of these products believe that unless a product can reduce tissue pressure to below critical levels, it is of nominal value in fighting bedsores.

The number of firms that develop and market pressure sore prevention products, although small, is highly competitive. In the early 1980's, plaintiff Grant's method of gaining market share involved for the most part offering its products at a better price. In response, defendant Gaymar determined to promote its products' alleged superiority and set out to develop comparative literature.

From 1981 to 1984, Gaymar published and disseminated four pieces of product literature that contain comparisons of Gaymar's and Grant's pressure sore prevention products. In August 1981, Gaymar independently created and issued the first disputed piece of literature, a brochure entitled "Protection From Pressure Sores—Alternating Pressure Systems by Gaymar and Grant—A Comparison." The brochure stated that Grant's alternating pressure pad system could not reduce tissue pressure below critical levels. Later in 1981, Gaymar hired Calspan to conduct tests comparing Gaymar products against a number of competing products including Grant's alternating pressure pad system, for use in Gaymar advertising. The result of the Calspan tests are contained in the second publication, a report dated May 14, 1982. The Calspan name and logo appear prominently on the front page of the report and the report describes Calspan as "an independent not-for-profit research/development center." In August 1982, Gaymar issued the third publication, a brochure based upon data contained in the Calspan report. In 1984, this brochure was revised nonsubstantively and was reissued constituting the fourth disputed publication.

The central issue in this lawsuit is the veracity, accuracy, purpose, and effect of the allegedly independent, scientific study by defendant Calspan on which three publications issued by Gaymar were based. This study tested the pressure relief characteristics of twelve dynamic and static pressure sore prevention products in a procedure involving two human subjects. Among the circumstances of the Calspan testing procedures significant to this litigation are the use of a Gaymar employee as a testing subject, the use of testing equipment and competing products supplied by Gaymar, the reliance on Gaymar instructions regarding operation and evaluation of the competing products tested, Gaymar's provision of a seven-year-old, substantially altered and malfunctioning Grant air pressure pump to inflate and deflate the Grant pressure pad system, and the replacement of the malfunctioning Grant pump with a nonconforming Gaymar pump in order to complete the tests.

The Calspan report ranked the twelve pressure sore prevention products, listing the four Gaymar products tested as best in reducing tissue pressure to below critical levels. The report ranked the Grant product in the middle of the list and indicated that the Grant product could not provide the tissue pressure relief required to prevent or alleviate bedsores. The report also contained ambiguous language regarding the causes of the malfunctioning of the Grant air pressure pump and did not explain fully the hybrid nature of the pressure pad system that produced the test results attributed to a Grant product. Gaymar additionally altered some of the findings in the report before reprinting and disseminating it. Together, Gaymar and Calspan printed and distributed over 9,000 copies of the report holding it out as an independent, scientific study.

Grant has alleged that these four pieces of literature disparaging Grant's products were part of a malicious campaign by Gaymar to regain business lost to Grant. Grant claims that Gaymar and Calspan as joint tortfeasors intentionally made materially fraudulent and misleading representations about Grant's and Gaymar's products in violation of federal and state prohibitions

against unfair competition by means of false advertising.

## CALSPAN'S MOTION FOR SUMMARY JUDGMENT AGAINST GRANT

In support of its Motion for Summary Judgment Against Grant, Calspan argues that it is not an entity which, within the facts of this case, may be held liable under the Lanham Act § 43(a). Alternatively, Calspan claims that its report did not contain any false statements and that, in any case, the allegedly false report did not cause damages to Grant. The Lanham Act § 43(a) reads in pertinent part:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, ... any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such ... description or representation cause or procure the same to be transported or used in commerce ..., shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation. 15 U.S.C. § 1125(a).

Calspan argues that its conduct in this matter does not come within the purview of the Lanham Act prohibition against falsely describing or misrepresenting goods and, with knowledge of the falsity, causing such goods to enter commerce. First, Calspan claims that, as the Lanham Act is intended to protect against unfair competition, it may be used only as against competitors. According to Calspan, since it is a research firm and does not compete with either Grant or Gaymar in the sale of pressure sore prevention products, the claim against it must be dismissed. Second, Calspan contends that it cannot be held liable for contributory infringement because such liability may attach only to participants in the chain of distribution of the advertised goods who caused them to enter commerce. Calspan claims that testing facilities, such as itself, that do not deal in the goods, cannot be said to have caused them to be used in commerce.

While Calspan is correct in noting that competition between the litigants is a factor in evaluating Lanham Act claims, *Vidal Sassoon, Inc. v. Bristol-Meyers Company*, 661 F.2d 272, 274 (2d Cir.1981); *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir.1980), such claims are not restricted to those against competitors of the plaintiff. Our Court of Appeals has held that "competitive injury is not required for recovery under section 1125(a)." *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 357 (2d Cir.1983), *reaffirming* 689 F.2d 1127, 1136 n. 13 (1982). Rather, the cases cited by Calspan in its memorandum in support of the instant motion stand for the proposition that a finding of competition between the plaintiff and the defendant is one way to satisfy the standing requirement that the plaintiff has a "reasonable interest to be protected against the alleged false advertising." *Johnson & Johnson v. Carter-Wallace, Inc., supra*, 631 F.2d at 190, *citing* 1 R. Callman, *Unfair Competition, Trademarks and Monopolies*, § 18.2(b) at 625 (3d ed. 1967).

It is undisputed that plaintiff Grant competes directly with defendant Gaymar in the market for pressure sore prevention products. It is equally clear that Grant has a stake in prosecuting a claim that misleading advertisements unfavorably compared its products to Gaymar's. Having demonstrated a "reasonable interest," Grant is entitled to frame a Lanham Act claim against all those allegedly responsible for falsely describing and placing in commerce the advertised goods. Thus, Calspan's status as a "non-competitor" does not require dismissal of the Lanham Act claim against it.

Calspan then asserts that it cannot be held liable because it has not caused any goods to enter commerce. We first note that liability under the Lanham Act has been construed to extend beyond those who actually misrepresent goods or directly place such goods in commerce. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854–55, 102 S.Ct. 2182,

2188–89, 72 L.Ed.2d 606 (1982); *Display Producers, Inc. v. Shulton, Inc.,* 525 F.Supp. 631, 633 (S.D.N.Y.1980) (Owen, J.). Section 43(a) states that it extends to any person who knowingly causes a false representation to be used in connection with goods and services in commerce. *Noone v. Banner Talent Associates, Inc.,* 398 F.Supp. 260, 263 (S.D.N.Y.1975) (Metzner, J.). The record reflects that Calspan independently distributed and presented in commerce the allegedly false report. Furthermore, the evidence is undisputed that Calspan assisted in Gaymar's sales efforts. Calspan staff members testified in depositions that Calspan scientists promoted Gaymar products in speeches to Gaymar's sales staff and customers and in presentations to research and scientific organizations. The conduct of Calspan employees sufficiently contributed to placing Gaymar's goods in commerce to bring Calspan within the purview of the Lanham Act.

■ Contrary to Calspan's assertions, that Calspan is not technically a member of the chain of distribution of the advertised goods does not automatically exclude it from liability as a contributory infringer under the Lanham Act. Such an exclusion is not required by any construction of the statute or by the law governing joint tortfeasor liability in analogous circumstances. Rather, as with most tort actions a defendant who supplies another with instruments by which another commits a tort may be found liable if he had "knowledge that the other will or can reasonably be expected to commit a tort with the supplied instrument. The test is whether wrongdoing by the purchaser might well have been anticipated by the defendant." *Display Producers, Inc. v. Shulton, Inc.,* 525 F.Supp. at 633 (shopowner liable under the Lanham Act for allowing one display designer to palm off as his own the showcase design of another display designer); *accord Bose Corp. v. Consumers Union of U.S., Inc.,* 508 F.Supp. 1249 (D.Mass.1981), *rev'd on other grounds,* 692 F.2d 189 (1st Cir.1982), *aff'd,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1983) (manufacturer's claim of bias against consumer product testing organization's ratings of its product survived

to trial although ultimately unsuccessful); *Noone v. Banner Talent Associates, supra,* 398 F.Supp. 260 (music booking agent could be held liable for booking band knowing it was using misleading designation). Grant's Lanham Act claim against Calspan will survive summary judgment so long as the evidence viewed most favorably toward Grant supports a finding that Calspan should have anticipated the wrongdoing by Gaymar.

■ The Second Amended Complaint in the instant action asserts: "Gaymar and Calspan as joint tortfeasors ... have published injurious falsehoods to Gaymar's and Grant's customers and potential customers, with actual malice or with reckless disregard for the truth." (¶ 35). The complaint later alleges willful and intentional conduct by Calspan in support of Lanham Act liability. (¶ 37). Pre-trial discovery efforts have raised material issues of fact with respect to Grant's allegations. The parties dispute, among other things, whether Calspan's researchers knew that the Grant product had been altered by Gaymar, whether Calspan intentionally omitted or misrepresented relevant data, and whether Calspan knew Gaymar would use the report in its advertising campaign. The Court is constrained by this Circuit's repeated holding that subjective issues such as intent and good faith are inappropriate for summary judgment, and should be reserved for trial. *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 10 (2d Cir.1983); *American International Group, Inc. v. London American International,* 664 F.2d 348, 353 (2d Cir.1981). Summary judgment is denied to Calspan to the extent its motion is based on the argument that it cannot be held liable as a contributory infringer under the Lanham Act.

Nor can Calspan prevail on the argument that the report contains no false representation which could deceive customers of pressure sore prevention products. Calspan claims that it sufficiently alerted readers of its report to the fact that the Grant product tested was malfunctioning and thus could not produce reliable results.

Calspan further argues that no unbiased reader would assume that a defect in the Grant unit caused the malfunction or would credit the results of the experiment using the Grant unit. Calspan also relies on various disclaimers in the report to argue that the report could not have influenced purchasing decisions. In sum, Calspan claims the report is "not literally false."

The statement in the report most damaging to Grant reads:

"The [Grant] unit was cycled manually for alternate fill-empty cycles at one minute each, using the maximum pressure because a malfunction in the device itself prevented activation in the automatic mode." (Calspan Report, May 14, 1982, section 6).

Grant claims that the statement is, at the least, ambiguous about the causes of the malfunctioning of the Grant unit tested and could easily create the impression that the product was inherently defective. This is so, according to Grant, especially considering that the report does not explain that the Grant pump was altered and eventually replaced with a nonconforming Gaymar pump. Grant contends that the Calspan report falsely stated the cycle time of the Grant air pressure pump as two minutes instead of six minutes, giving the impression that the Grant unit was inferior. Grant also identifies relevant data in a preliminary version of the report, allegedly purposely omitted by Calspan and Gaymar in denigration of Grant products and in promotion of Gaymar products. Grant claims that both defendants fraudulently advertised the test results as "scientific" and reliable, pointing out that Calspan would not have printed over 1000 copies of the report to distribute independently if it believed the report to have no influence or merit.

 Once again the motion papers have raised a genuine issue of material fact. Even assuming that the Calspan report is "not literally false," the Lanham Act § 43(a) encompasses more than literal falsehood. *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978). Especially in cases involving advertising based on product comparisons, a claimant may succeed by showing that the innuendo or ambiguity in the disputed advertisement would have a tendency to deceive the buying public. *Vidal Sassoon, Inc. v. Bristol Meyers Co., supra,* 661 F.2d 272, 278; *R.J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.,* 511 F.Supp. 867, 874–75 (S.D.N.Y.1980). Proof of intent to deceive is not required. *Johnson & Johnson v. Carter-Wallace, Inc., supra,* 631 F.2d at 189. It cannot be said on the present record that a reasonable consumer would not be misled about the relative merits of Gaymar's and Grant's products after reading the Calspan report. Calspan's motion for summary judgment is denied insofar as based on the argument that the advertising was not false or deceptive.

With respect to Calspan's final argument that the Calspan report did not actually damage Grant, The Court enlarges its discussion to address Gaymar's motion for summary judgment against Grant which is grounded on similar allegations.

## GAYMAR'S MOTION FOR SUMMARY JUDGMENT AGAINST GRANT

Defendant Gaymar's Motion for Summary Judgment Against Plaintiff Grant is not predicated on denials of falsity or fraud. Rather, Gaymar moves for dismissal based on the alleged failure of Grant to prove injury resulting from a Lanham Act violation. More specifically, Gaymar claims, and Calspan concurs, that Grant has failed to demonstrate lost business or to identify lost customers resulting from the alleged false advertisement. In addition, Gaymar argues that Grant's delay in commencing the instant action precludes recovery of any damages prior to the first complaint, and Grant's noncompliance with certain discovery requests precludes recovery of post-complaint damages.

Resolution of the dispute over the existence of injury and damages is governed by the principle that "a plaintiff who establishes false advertising in violation of § 43(a) of the Lanham Act will be entitled only to such damages as were caused by the violation." *Burndy Corp. v. Teledyne Industries, Inc.,* 748 F.2d 767, 771 (2d Cir.1984).

This Court has had occasion in the past to apply the rule that "a monetary award, whether in the form of damages or an accounting, is justified only to the extent that injury is shown already to have been suffered." *Vuitton et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1077 (S.D.N.Y.1979), *aff'd without opinion,* 622 F.2d 577 (2d Cir.1980), *citing Monsanto Chemical Co. v. Perfect Fit Mtg. Co., Inc.,* 349 F.2d 389, 392 (2d Cir.1965).

Grant has requested damages for lost business, loss of reputation and corrective advertising, and has requested attorney fees, an accounting, and permanent injunctive relief. The present record raises a material issue of fact as to the existence of actual injury and the propriety of damages and various other forms of relief requested. Drawing every reasonable inference in Grant's favor, a jury would be entitled to find that Grant sustained the injuries alleged and deserves the relief requested. *Ambook Enterprises v. Time Inc.,* 612 F.2d 604, 611 (2d Cir.1979).

Grant has submitted credible evidence of diversion of sales resulting from Gaymar's allegedly false claims of product superiority. According to the deposition of Gaymar's product manager, use of the advertising literature in dispute here "worked as a sales tool" and helped convince the public to buy Gaymar products instead of Grant products. (James H. Price Deposition, p. 54). A Gaymar salesman testified at deposition that he used the Calspan report as a selling tool and that it was a factor in the purchasing decision of many hospitals. (David Lamiell Deposition, pp. 24, 77). Grant has submitted the deposition testimony of a number of individuals involved in the purchasing decisions of health care facilities, many of whom stated that they read and relied on the Calspan report. (E.g., Suzanne Serfozo Deposition, pp. 63–64). Grant disputes Gaymar data showing that Grant's sales have increased since the publishing of the Calspan report. Grant contends that, viewing the hospital market alone, Grant's sales have declined overall and are significantly below the industry standard. The precise cause of such decline is a triable issue of fact on the record presently before the Court.

Gaymar claims that no Lanham Act violation exists unless Grant identifies a lost customer actually misled by the advertising literature or produces market research to that effect. Such evidence is not a *sine qua non* of a Lanham Act claim, but rather goes to the quantum of proof. Grant's moving papers have identified genuine issues of material fact as to the deceptive nature of the advertising and its effect on customers.

Grant also emphasizes that damages resulting from lost business is but one element of its Lanham Act claim. It also demands five additional forms of relief. First, Grant claims it is entitled to damages for loss of reputation, relying on statements by hospital personnel that the Calspan report created suspicion about the reliability of Grant products. (E.g. Peterson Deposition, pp. 45–67). Second, Grant claims it is entitled to the attorney fees necessary to prove the advertising literature false. Third, Grant claims it is entitled to monetary relief for corrective advertising necessitated by the Calspan report. Fourth, Grant claims it is entitled to an accounting, available to it allegedly because Gaymar has been unjustly enriched and has acted "willfully with full knowledge of plaintiff's rights and as part of a pre-conceived plan to trade upon plaintiff's goodwill." *Monsanto Chemical Co. v. Perfect Fit Mtg. Co., Inc., supra,* 349 F.2d at 391. Fifth, Grant claims it is entitled to a permanent injunction against further use of the Gaymar-Calspan materials. Grant points out that the Lanham Act requires neither actual consumer confusion nor actual injury for permanent injunctive relief, but only a showing of the possibility of future injury. *Johnson & Johnson v. Carter-Wallace, Inc., supra,* 631 F.2d at 189; *Vidal Sassoon, Inc. v. Bristol Meyers Co., supra,* 661 F.2d at 1077.

Neither Calspan nor Gaymar have contested the availability of these alternative forms of relief and this Court makes no findings as to the likelihood that such relief

will be granted. This Court cannot say as a matter of law that such relief will be inappropriate to remedy any Lanham Act violation Grant may prove at trial. Grant's Lanham Act claim survives summary judgment insofar as the instant motions allege failure to demonstrate injury and damages.

Finally, Gaymar contends that Grant's laches in commencing this suit precludes recovery of any damages prior to the date of the original complaint, April 1985. Gaymar alleges that Grant was in possession of the 1981 brochure in the latter part of that year and, because of their widespread distribution, should have known of the existence of the three other pieces of advertising literature when they were issued in 1982 and 1984. According to Gaymar, if only Grant had complained sooner, its injuries would have been proportionately smaller. Gaymar also claims that Grant's recalcitrance in providing discovery of post-complaint information precludes recovery of post-complaint damages.

Grant counters that its reaction upon reading the 1981 brochure was reasonable in that it avoided "rushing into court" and instead pursued the alternative route of complaining to the industry's trade association. Grant further alleges that it first learned of the Calspan report and related advertising literature in 1984 and cannot be charged with constructive knowledge before that time. Grant also notes that other competitors whose pressure sore prevention products were ranked in the Calspan report complained of the report's inaccuracies as early as 1983 and that Gaymar nonetheless continued to circulate it. Grant denies that it failed to comply with discovery demands for post-complaint information noting that it turned over such materials as its 1985 tax returns.

Laches is a matter addressed to the court's discretion. *Dickey v. Alcoa Steamship Co., Inc.*, 641 F.2d 81, 82 (2d Cir.1982). Where the delay is shorter than the applicable statute of limitations, as here, the burden of proving the affirmative defense of laches rests with the defendant. *Pstragowski v. Metropolitan Life Ins. Co.*, 553 F.2d 1 (1st Cir.1977); *Price v. Levers*,

475 F.Supp. 937 (W.D.Pa.1979), *aff'd*, 620 F.2d 289 (3d Cir.1980). Before laches can be found, the defendant must show more than mere passage of time, but also that the delay was inexcusable and resulted in undue prejudice to the defendant. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 65 (2d Cir.1983); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 574 (2d Cir.1973); *Dalsis v. Hill*, 424 F.Supp. 784, 788 (W.D.N.Y.1976) (Elfvin, J.). The Court will inquire as to when the plaintiff had actual or constructive knowledge of the facts affecting his rights and whether the plaintiff has a satisfactory excuse for the delay. *De Silvio v. Prudential Lines, Inc.*, 541 F.Supp. 625, 627 (S.D.N.Y.1982) (Tenney, J.).

The prejudice normally contemplated in applying laches stems from some change in the defendant's position or such factors as loss of evidence and unavailability of witnesses which diminish the defendant's chance of success. *Hill v. W. Bruns & Co.*, 498 F.2d 565, 568 (2d Cir.1974); *Julius Nasso Concrete Corp. v. Dic Concrete Corp.*, 467 F.Supp. 1016, 1024 (S.D.N.Y.1979) (Carter, J.). Defendant Gaymar does not complain of prejudice in this sense. Gaymar instead asserts that acting in bad faith, Grant has allowed its damages to "build up" for four years. Laches, however, is an equitable defense and does not serve to bar claims for damages. The relevant statute of limitations provides the only barrier to stale actions at law. *M. Lowenstein & Sons, Inc. v. Austin*, 430 F.Supp. 844, 846 (S.D.N.Y.1977) (Duffy, J.). That Grant did not challenge Gaymar's conduct until it perceived a major, as opposed to modest, advertising assault on its products does not disable Grant from bringing this action. *See Parrot Jungle, Inc. v. Parrot Jungle, Inc.*, 512 F.Supp. 266, 270 (S.D.N.Y.1981) (Owen, J.). Gaymar does not argue that Grant's demands for equitable relief are time-barred.

With respect to the dispute over Grant's alleged failure to allow discovery of post-complaint damages information, Gaymar claims that Grant has refused to provide

particularized proof of lost customers and sales for that period. It appears that Gaymar is reiterating its contention that Grant cannot proceed without such proof. As discussed above, evidence of specific lost customers and sales is not essential to the prosecution of a Lanham Act claim. This Court's ruling that it would preclude at trial any information on post-complaint damages held back by Grant, (Proceedings on February 26, 1986) has not been violated by Grant's alleged failure to identify a customer lost during that period. Grant has produced tax returns and accounting statements for the relevant period and may use such documents to attempt prove post-complaint damages, if any.

Defendants' motions for summary judgment against Grant are denied.

GAYMAR'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CALSPAN

Defendant Calspan has cross-claimed against defendant Gaymar seeking indemnification for all costs, including attorneys' fees, incurred in the defense and disposition of Grant's claims. In asserting this cross-claim, Calspan relies on a written contract for the performance of the comparative study which contains the following provision:

> "The Purchaser agrees to indemnify and save harmless Calspan and its employees against any and all claims for personal injury or property damage arising from the use of or related in any way to the test results or data delivered by Calspan pursuant to this contract."

Gaymar has moved for partial summary judgment seeking to dismiss that portion of the cross-claim which seeks indemnification of attorneys' fees from Gaymar. Gaymar contends that the facts surrounding the execution of the contract are undisputed and the indemnity provision cannot be construed to include coverage of attorneys' fees. Calspan agrees that there exists no genuine issue of material fact but claims that it should be granted summary judgment declaring that Gaymar must indemnify it for any liability that might arise in the instant action and for all costs and attor-

neys' fees. The Court will treat Calspan's argument as a cross-motion for summary judgment on its cross-claim.

■ The Calspan-Gaymar contract was made and performed in New York, and is regulated by New York law. As with any contract provision, the indemnity provision must be read in light of the circumstances surrounding its execution and the intentions of the parties. However, it should be noted that "contracts indemnifying a party against his negligence are generally disfavored and strictly construed against the drafter." *Quintel Corp. N.V. v. Citibank, N.A.*, 596 F.Supp. 797, 801 (S.D.N.Y.1984) (Sweet, J.). Only those contractual provisions which express a clear and unmistakable intent to indemnify a party against his own negligence are enforceable under New York law. *Gross v. Sweet*, 424 N.Y.S.2d 365, 367 (N.Y.Ct.App.1979). The indemnity provision here is not so broad or inclusive, nor were negotiations of the provision so extensive, as to allow the Court to construe the provision to cover Calspan's own negligence. No basis has been presented for indemnifying intentional conduct.

■ Calspan claims the contract requires Gaymar to indemnify it for the damages, costs and attorneys' fees it may become liable for in the instant action alleging violations of the Lanham Act and the New York General Business Law. However, a finding of liability based on Calspan's negligent or intentional conduct would preclude indemnification under controlling law. While it is not necessary to show intent or willful conduct to establish a violation of either statute, evidence of such is often introduced at trial to establish the likelihood of deception of the buying public. *Johnson & Johnson v. Carter-Wallace, Inc.*, *supra*, 631 F.2d at 189; *McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517, 529 (S.D.N.Y. 1980) (Lasker, J.). As the nature of Calspan's participation in the statutory torts alleged is still undetermined, its right to indemnification cannot be decided at this juncture.

Gaymar's motion for partial summary judgment dismissing Calspan's cross-claim for attorneys' fees and Calspan's cross-motion for summary judgment on its entire cross-claim are denied.

Grant's motion to strike alleged defamatory matter in Gaymar's memorandum of law in support of its motion for summary judgment against Grant is denied because such matter may have bearing on the subject matter of the litigation.

So Ordered.