**BERNARD FOOD INDUSTRIES, INC.,**
Plaintiff-Appellee,

v.

The **DIETENE COMPANY,** Defendant-
Appellant.

No. 17334.

United States Court of Appeals
Seventh Circuit.

Aug. 19, 1969.

Rehearing En Banc Denied
Sept. 10, 1969.

John W. Mooty, Robert E. Bowen, Minneapolis, Minn., for defendant-appellant, Cant, Haverstock, Gray, Plant & Mooty, Minneapolis, Minn., Dean A. Olds, Jerome Gilson, Hume, Clement, Hume & Lee, Chicago, Ill., of counsel.

Leonard Rose, Mason, Albright, Stansbury & Rose, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, CUMMINGS and KERNER, Circuit Judges.

SWYGERT, Circuit Judge.

The plaintiff, Bernard Food Industries, Inc., an Illinois corporation, brought this diversity action against the defendant, The Dietene Company, a Minnesota corporation, seeking damages for false disparagement of one of its products, Instant Egg Custard Mix, in violation of section 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125 (a); for defamation under section 43(a) of the Lanham Act and the common law of libel; and for attempting to monopolize the sale of instant custard and eliminate Bernard as a competitor in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

The district court, after a trial, entered findings of fact and conclusions of law favorable to Bernard. Although the court concluded that Dietene was liable for damages on each of the three separate claims, it determined that these separate damages were a "duplication." Consequently it allowed damages of three times $10,293.76, or $30,881.28. The court then added $10,000 as punitive damages and $10,000 as attorneys' fees and ordered judgment in ·favor of Bernard in the total amount of $50,881.28. Dietene prosecutes this appeal from the judgment entered.

Both Bernard and Dietene are manufacturers and distributors of food products for sale in interstate commerce. Since 1964, one of Bernard's products has been a food preparation containing no egg solids and which has been sold under the name "Bernard Instant Custard Mix." In the summer of 1965, Dietene began marketing its instant no-bake egg custard called "Delmark Quick Egg Custard Mix." In December 1965 Bernard commenced marketing its instant no-bake custard, containing egg solids, under the name "Bernard Instant Egg Custard."

In January 1966 Dietene's chemist, Doctor Norbal Barker, made a comparison of Dietene's egg custard product with Bernard's eggless custard product. The comparison sheet which he prepared referred to plaintiff's product as "Bernard Custard." Doctor Barker in making his comparison relied upon information supplied in a data sheet prepared by Bernard which listed the contents of "Bernard Instant Custard Mix." At the time of the preparation of the comparison, Dr. Barker had no knowledge that the plaintiff was manufacturing or marketing an instant egg custard.

The comparison sheet was distributed by Dietene to five of its administrative and executive employees and, at the most,

nine of its thirty-two salesmen. In February 1966 one of Bernard's salesmen obtained a copy of the comparison sheet. Subsequently, Bernard filed a complaint with the Federal Trade Commission alleging that the use of the comparison sheet constituted an unfair trade practice. Dietene's president thereafter filed with the Federal Trade Commission an affidavit of voluntary compliance which stated, in part, that Dietene would not use the representations contained in its comparison sheet in the future for advertising or sales purposes. The affidavit expressly stated that this assurance was given for settlement purposes only and did not constitute an admission that the questioned acts or practices were unlawful. In August 1966 on the basis of Dietene's assurance, the Federal Trade Commission matter was closed.

At trial Bernard introduced no evidence that a single customer or potential customer of the plaintiff was either given or shown a copy of Dietene's comparison sheet. Bernard claimed, however, that a copy was received by Cecilia Walker, a dietitian at Central General Hospitals, Plainview, Long Island, New York. Cecilia Walker testified, however, she had never read the comparison sheet and had no recollection of seeing or being given a copy of it before her deposition was taken. Bernard's president testified he knew of no customer or sale which was lost because of Dietene's conduct. The only evidence Bernard introduced at the trial which related to the question of the causation of its alleged damages was the testimony of Bernard's president that in his opinion the plaintiff's total gross sales of its products during the period in question decreased because of Dietene's conduct. No other evidence was introduced by Bernard to establish that its custard mix sales were depressed as a result of Dietene's actions.

## I. *The Claim for Libel*

Bernard asserted that publication of the alleged libel occurred "no later" than February 5, 1966. The complaint was filed June 6, 1967, more than one year after the publication. The Illinois statute of limitations requires that action for libel shall be commenced within one year after the libel occurs.[1] Thus, because the complaint was not filed until more than one year had elapsed after the publication date, the action was barred unless the action was tolled by Ill.Rev.Stat. ch. 83, § 19.[2]

Although the district court found that Dietene continuously held a Certificate of Authority to transact business in Illinois and that it had maintained a registered office and registered agent in Illinois since September 14, 1965, the court concluded, with respect to the libel claim, that the Illinois statute of limitations had not run in favor of Dietene because it had not been a resident of the State of Illinois at any time after the libel occurred and, therefore, under Illinois law it could not "claim the benefit of the Illinois statute of limitations until it becomes a resident of Illinois."

The court's ruling was contrary to Illinois law. Under the applicable decisions of that state, the question whether a foreign corporation is within the state for statute of limitations purposes depends upon whether the corporation is amenable to process during the

---

1. Ill.Rev.Stat. ch. 83, § 14 (1967) provides:

 Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.

2. Ill.Rev.Stat. ch. 83, § 19 (1967) reads:

 If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the times herein limited, after his coming into or return to the state; and if, after the cause of action accrues, he departs from and resides out of the state the time of his absence is no part of the time limited for the commencement of the action. But the foregoing provisions of this section shall not apply to any case, when, at the time the cause of action accrued or shall accrue, neither the party against nor in favor of whom the same accrued or shall accrue, were or are residents of this state.

limitation period, and does not depend upon where the corporation is domiciled. Pennsylvania Co. v. Sloan, 1 Ill.App. 364 (1878); Hubbard v. United States Mortgage Co., 14 Ill.App. 40 (1883); Thornton v. Nome and Sinook Co., 260 Ill.App. 76 (1931). The Thornton case discussed Pennsylvania Co. v. Sloan and Hubbard v. United States Mortgage Co. and said that they were authority "for holding only that foreign corporations operating in Illinois and subject to process in this State, may be considered as residents of Illinois only in so far as they are amenable to service within the State the same as a domestic corporation, and that since process must be accepted by them, they also share the privilege with domestic corporations, of pleading the statute of limitations." 260 Ill.App. at 83.

At all relevant times, Dietene had a registered agent for service of process within Illinois pursuant to Ill.Rev.Stat. ch. 32, §§ 157.102–157.125 (1967), and was amenable to service of process within Illinois. Ill.Rev.Stat. ch. 32, § 157.111 (1967).[3] Since the test for tolling the Illinois statute of limitations is amenability to process, it would appear to be beyond question that the statute continued to run in this case until the action was barred.

■ Bernard argues, however, that the Illinois decisions interpreting that state's tolling statute should not be applied because the cause of action arose out of a tort which was "initiated" in Minnesota and that it did not arise out of any transaction of business between Bernard and Dietene in Illinois. Therefore, Bernard argues that Dietene was a "nonresident within the meaning of the Illinois Statute of Limitations' tolling provisions, Ill.Rev.Stat. ch. 83, sec. 19." We cannot agree with this argument. Bernard's contention is that a registered agent of a foreign corporation is not amenable to process on a cause of action

which does not arise out of the transaction of business within Illinois and therefore in the present case the tolling provision of the Illinois Statutes would prevent the statute of limitations from running against Dietene. This objection to personal jurisdiction was not presented below and was therefore waived and need not be considered here.

■ Bernard next asserts that Minnesota's longer statute of limitations should be applied in the present case. First, it should be noted that the place where the alleged tort occurred does not appear to have been a matter that either the parties or the trial court considered in relation to the defendant's statute of limitations defense. But more important, the Illinois statute of limitations applies in this case. Under Illinois decisional law, where either a plaintiff or a defendant is a resident of that state and where the cause of action arises outside of Illinois, Illinois will apply its own statute of limitations if the cause of action is one which is recognized at common law and not one created by statute. Jackson v. Shuttleworth, 42 Ill.App.2d 257, 192 N.E. 2d 217 (1963); Wetzel v. Hart, 41 Ill. App.2d 371, 190 N.E.2d 619 (1963); Horan v. New Home Sewing Machine Co., 289 Ill.App. 340, 7 N.E.2d 401 (1937); Haefer v. Herndon, 22 F.Supp. 523 (S.D. Ill.1938); Riley v. Union Pac. R. Co., 177 F.2d 673 (7th Cir. 1949), cert denied, 338 U.S. 911, 70 S.Ct. 350, 94 L.Ed. 561 (1950). Since libel is a common law right under Illinois law, these cases are apposite and must be given recognition.

We conclude that the district court erred in not holding that Bernard's claim based on libel was barred because of the Illinois statute of limitations.

II. *The Claim under the Lanham Trade-Mark Act*

The district court concluded that the proof showed that Dietene "by its com-

---

3. Ill.Rev.Stat. ch. 32, § 157.111 (1967) provides in part:

> Service of process in any suit, action, or proceeding, or service of any notice or demand required or permitted by law

to be served on a foreign corporation may be made on such corporation by service thereof on the registered agent of such corporation.

parison sheet has substantially misrepresented its own product in interstate commerce to plaintiff's detriment" and thus violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Although the court's underlying findings speak in general terms of misrepresentation by Dietene of its own product, the comparison sheet and the testimony do not support such findings. There is no evidence that the analysis made by Dr. Barker of Delmark Quick Egg Custard (Dietene's product) was false. The alleged falsity of the comparison sheet resides in the statements made about Bernard's custard mix. Even the statement that "Delmark Quick Egg Custard is superior to Bernard Custard in all major respects," must be read in context with various comparisons made between the two products as to flavor, texture, nutrition, and cost. These comparisons all deal with claimed deficiencies of the Bernard custard mix when compared to the defendant's product. They do not in any manner assert that Dietene's product has qualities that are found in Bernard's custard mix. Thus, despite the district court's findings to the contrary, the misrepresentations relate not to defendant's product but to that manufactured by the plaintiff.

 Since a review of the record demonstrates that this case is concerned only with disparagement of the plaintiff's product, it does not come within the purview of the Lanham Act. False advertising or representations made by a defendant about a plaintiff's product are not covered by section 43(a). Holsten Import Corp. v. Rheingold Corp., 285 F.Supp. 607 (S.D.N.Y.1968); Smith-Victor Corp. v. Sylvania Electric Products, Inc., 242 F.Supp. 302 (N.D.Ill. 1965); Gold Seal Co. v. Weeks, 129 F. Supp. 928, 940 (D.D.C.1955), *aff'd per curiam*, S. C. Johnson & Son, Inc. v. Gold Seal Company, 97 U.S.App.D.C. 282, 230 F.2d 832 (1956). We believe that a correct interpretation of the Lanham Act is contained in Samson Crane Co. v. Union National Sales, Inc., 87 F.Supp. 218 (D.Mass.1949), *aff'd per curiam*, 180

F.2d 896 (1st Cir. 1950). In that case the district court said:

It is true that the section speaks of "any false description or representation" but this must first be interpreted in the light of the succeeding phrase which explains these words as including words or symbols tending falsely to describe or represent, not any fact, but the goods or services in connection with which the description or representation is used. The intent of Congress in passing the Act is set forth in the final paragraph of Section 1127. Only one phrase of that paragraph fails to use the word "mark". And that phrase ("to protect persons engaged in such commerce against unfair competition") must in such a context be construed to refer not to any competitive practice which in the broad meaning of the words might be called unfair, but to that "unfair competition" which has been closely associated with the misuse of trade-marks, i. e., the passing off of one's own goods as those of a competitor. It is clear, both from this statement of the intent and from a reading of the Act as a whole, that the primary purpose of the Act was to eliminate deceitful practices in interstate commerce involving the misuse of trademarks, but along with this it sought to eliminate other forms of misrepresentations which are of the same general character even though they do not involve any use of what can technically be called a trade-mark. The language of Section 43(a) is broad enough to include practices of this latter class. But the section should be construed to include only such false descriptions or representations as are of substantially the same economic nature as those which involve infringement or other improper use of trademarks. It should not be interpreted so as to bring within its scope any kind of undesirable business practice which involves deception, when such practices are outside the field of the trade-mark laws, and especially when such undesirable practices are already the subject

of other Congressional legislation, such as the Federal Trade Commission Act. (Footnote omitted.) 87 F.Supp. at 222.

Further support for the view that the Act does not embrace misrepresentations about a competitor's product but only false or deceitful representations which the manufacturer or merchant makes about his own goods or services is contained in L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954), and General Pool Corp. v. Hallmark Pool Corp., 259 F.Supp. 383 (N.D.Ill.1966).

For the foregoing reason, the district court erred in holding that Bernard established a cause of action under the Lanham Act. Additionally, it should be noted that there was no evidence that plaintiff lost any specific sales by reason of the publication and dissemination of the comparison sheet or that its loss of business was attributable to the defendant's conduct.

III. *The Claim under Section 2 of the Sherman Act*

The district court concluded that the defendant violated Section 2 of the Sherman Act, 15 U.S.C. § 2, in that it had attempted to monopolize sales in "similar products" manufactured by the plaintiff and the defendant, and that the defendant had "attempted to accomplish a temporary monopoly" over such sales.

Section 2 of the Sherman Act proscribes an attempt "to monopolize any part of the trade or commerce among the several States." Judge Learned Hand succinctly stated the elements of a Section 2 violation: "In order to fall within § 2, the monopolist must have both the power to monopolize, and the intent to monopolize." United States v. Aluminum Co. of America, 148 F.2d 416 (2d Cir. 1945). There is no evidence whatever to indicate that the defendant's conduct in publishing the comparison sheet manifested an intent to monopolize. Absent also is any evidentiary basis for holding that the defendant possessed the power to monopolize. Moreover, there is no proof of what constituted the relevant market. Without such a determination, the question of a monopoly or an attempt to accomplish such a goal could in no manner be meaningfully answered. A definition of the relevant market is an essential element of a violation under Section 2 of the Sherman Act. United States v. Grinnell Corp., 384 U.S. 563, 570, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

The judgment of the district court is reversed.