**VICTORY PIPE CRAFTSMEN, INC., Plaintiff,**

v.

**FABERGE, INC. and J.C. Penney Company, Inc., Defendants.**

**No. 81 C 536.**

United States District Court, N.D. Illinois, E.D.

March 5, 1984.

Thomas G. Scavone, Hosier, Niro & Daleiden, Ltd., Chicago, Ill., for plaintiff.

William R. Carney, Rosaire M. Nottage, Bell, Boyd & Lloyd, Chicago, Ill., Richard Whiting, Davis, Hoxie, Faithfull & Hapgood, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This action is before the court on motion of defendants Faberge, Inc. and J.C. Penney Company, Inc. for summary judgment. For the reasons set forth below, defendants' motion is granted.

### Facts

Plaintiff, Victory Pipe Craftsmen, Inc. ("Victory"), is the owner of a local pipe store that was located in Chicago at the time this action was filed.[1] The business was founded in 1932 as a sole proprietorship by Arthur Silbur, who sold the business to his three children. The business was later incorporated, with the three children as officers. It is a family business which operates out of its sole store and a catalog business throughout the United States and in several foreign countries.

The trademark "Cellini" was adopted by Arthur Silbur for use in the business as early as 1932. Victory has never registered the Cellini mark. It has used the mark in both scripted and block form in many aspects of its business, and has used the trade name "Cellini Fine Pipes" as a secondary name for its business. Victory has sold various items under the Cellini trademark, including pipes, aromatic tobacco, products called "Insta Pipe Nest" and "Insta Cake," and leather pouches. In addition, Victory markets a variety of products related to pipes, tobaccos, cigars and smoking accessories. Victory's annual sales have been approximately $250,000 per year.

Faberge, Inc. is a large corporation which manufactures and sells perfumes, cosmetics, toiletries and related products for men and women with substantial sales in all 50 states and many foreign countries. Its principal trademark, "Faberge", is prominently displayed on all of its products. It distinguishes various product lines by secondary names used in addition to the

---

**1.** The store has since been moved to Morton Grove, Illinois, a suburb of Chicago.

principal mark "Faberge". In 1955, Faberge adopted the mark "Cellini" as a secondary name for a line of nail polishes and lipsticks with the marks "Cellini Gold", "Cellini Silver", and "Cellini Bronze". These marks were federally registered in 1958 and 1960. Faberge apparently abandoned the use of these marks with lipsticks and nail polishes in 1977. In September, 1980, Faberge launched a new line of men's cologne, aftershave, soaps and related items under the secondary name of "Cellini". The mark was registered for use with these products in November, 1974.

After Faberge began its national advertising campaign for its Cellini men's line, Victory contacted Faberge to discuss the possibility of a joint promotion of both companies' products.[2] When Faberge declined to agree to a joint promotion or any other agreement between the parties, Victory filed the instant action.

Victory's complaint against Faberge and J.C. Penney[3] alleges various trademark infringement claims in four counts. In Count I, plaintiff alleges a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), charging infringement and unfair competition by Faberge's use of the trademark "Cellini", alleging that defendants' advertising will cause the public to erroneously associate the large corporate defendant Faberge with its pipe business.

In Count II, Victory alleges violation of Illinois common law of unfair competition based on the factual allegations in Count I. Count III alleges a violation of the Illinois Anti-Dilution Act, Ill.Rev.Stat. ch. 140, § 22, for alleged unlawful dilution of the distinctive quality of plaintiff's trademark. Count IV alleges violation of the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, § 312. Victory seeks an injunction, compensatory and punitive damages, an award of defendants' profits from sales of the Cellini line, as well as costs and attorneys' fees.

*Summary Judgment*

Defendants have moved for summary judgment on all four counts. On a motion for summary judgment, the moving party has the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Cedillo v. International Association of Bridge and Structural Iron Workers*, 603 F.2d 7, 10 (7th Cir.1979). The non-moving party is entitled to all reasonable inferences that can be made in its favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the plaintiff may not merely rely on conclusory pleadings to withstand summary judgment. In responding to a motion for summary judgment, a plaintiff must set forth specific facts in affidavits or otherwise showing that there are genuine issues that must be decided at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983).

The purpose of the summary judgment procedure is to eliminate a trial in cases where a trial is unnecessary and results in delay and expense. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972). As the Seventh Circuit Court of Appeals has noted, with the ever-increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedures whenever possible. *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 559–60 (7th Cir.1970). Courts therefore will not strain to find the existence of a genuine issue where none exists. *Id.*

*Count I—§ 43(a) of the Lanham Act*

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services.[4] The pri-

---

**2.** J.C. Penney is a Chicago outlet for Faberge products.

**3.** Victory even placed an order for Faberge's Cellini products to sell in Victory's store.

**4.** Section 43(a) provides in relevant part:

mary purpose of the Act is to eliminate deceitful practices in interstate commerce involving the misuse of trademarks. *Bernard Food Industries, Inc. v. Dietene Company*, 415 F.2d 1279, 1283 (7th Cir. 1969), *cert. denied*, 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970). Section 43(a) also creates a cause of action for false advertising. *Id.*

In Count I of its complaint, Victory alleges an unusual claim under § 43(a), by asserting that its trademark is infringed by reverse confusion resulting from Faberge's use of the Cellini mark. In the usual direct confusion claim, a plaintiff asserts that a defendant's use of a mark causes consumers to believe that the goods originate from the plaintiff. The defendant is therefore thought to trade off the goodwill of the plaintiff. In a reverse confusion case, however, the plaintiff asserts that the defendant's use of a mark leads the public to believe that the *plaintiff's* goods originate with the defendant. Victory apparently asserts both reverse confusion and direct confusion claims in Count I under § 43(a) of the Lanham Act. The court finds that Faberge is entitled to summary judgment on both claims in Count I.

In its motion for summary judgment, Faberge argues that reverse confusion is not actionable under § 43(a). As Faberge correctly points out, reverse confusion has been recognized by only a handful of courts who based their decisions in most cases on interpretations of state trademark law. Significantly, no court has ever held that § 43(a) encompasses an action for reverse confusion. In *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir.1977), *cert. dismissed*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978), the seminal case recognizing a reverse confusion cause of action relied upon by Victory, the court permitted recovery for reverse confusion only under the state

law counts of the complaint applying Colorado law. Recovery under § 43(a) of the Lanham Act was permitted for plaintiff's direct confusion claim only. Similarily, in *Capitol Films Corp. v. Charles Fries Productions*, 628 F.2d 387 (5th Cir.1980), also relied upon by Victory, the court decided that reverse confusion was actionable under Texas law, not under the Lanham Act.

No federal court has directly addressed whether reverse confusion is actionable under § 43(a). The Seventh Circuit Court of Appeals has interpreted § 43(a) narrowly, however, for causes of action for false advertising or representations. In *Bernard Food Industries, Inc. v. Dietene Company*, 415 F.2d 1279 (7th Cir.1969), *cert. denied*, 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970), the court held that a cause of action for disparagement of the plaintiff's product does not come within the purview of the Lanham Act.

The court in *Bernard Food* reasoned that the potentially expansive meaning of the terms "unfair competition" in § 43(a) must be qualified in light of the primary purpose of the section, to protect against the misuse of trademarks. Actions for false advertising would be actionable under § 43(a) only when they were analogous to actions for the misuse of trademarks, i.e., the passing off of one's goods as those of a competitor. 415 F.2d at 1283. The court stated:

> It is true that the section speaks of "any false description or representation" but this must first be interpreted in the light of the succeeding phrase which explains these words as including words or symbols tending falsely to describe or represent, not any fact but the goods or services in connection with which the description or representation is used. The intent of Congress in passing the Act is set forth in the final paragraph of Section 1127. Only one phrase of that para-

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall

cause such goods or services to enter into commerce, ... shall be liable to a civil action by ... any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

graph fails to use the word "mark". And that phrase ("to protect persons engaged in such commerce against unfair competition") must in such a contest be construed to refer not to any competitive practice which in the broad meaning of the words might be called unfair, but to that "unfair competition" which has been closely associated with the misuse of trademarks, i.e., the passing off of one's own goods as those of a competitor. It is clear, both from this statement of the intent and from a reading of the Act as a whole, that the primary purpose of the Act was to eliminate deceitful practices in interstate commerce involving the misuse of trademarks, but along with this it sought to eliminate other forms of misrepresentations which are of the same general character even though they do not involve any use of what can technically be called a trade-mark. The language of Section 43(a) is broad enough to include practices of this latter class. But the section should be construed to include only such false descriptions or representations as are of substantially the same economic nature as those which involve infringement or other improper use of trademarks.

415 F.2d at 1283, quoting *Samson Crane Co. v. Union National Sales, Inc.,* 87 F.Supp. 218 (D.Mass.1949), *aff'd per curiam* 180 F.2d 896 (1st Cir.1950). The Court therefore concluded that commercial disparagement is not actionable under the Lanham Act unless the false representations made by the defendant are made about his own product, not the products of someone else.

Faberge argues that the decision in *Bernard Food* bars any cause of action under § 43(a) for reverse confusion, because with reverse confusion, any confusion which arises concerns the source of the plaintiffs goods, not the defendant's goods. In the passage of the *Bernard* decision quoted above, the court seems to assume that actions for trademark infringement are limited to actions in which the defendant attempts in some manner to pass off his goods as those of another. However, the

thrust of the *Bernard* decision was to limit actions for commercial disparagement because the principal purpose of § 43(a) was to prevent infringement of trademarks. Its reference to trademark actions made in this context cannot be interpreted to place substantive limits in the law of trademark infringement under § 43(a).

Moreover, courts have interpreted § 43(a) somewhat expansively to include forms of trademark infringement beyond the traditional passing-off causes of action referred to in the *Bernard* decision. Callman, *Unfair Competition and Trademarks* § 2.05, § 20.01 (4th Ed.1983). The court is therefore reluctant to conclude that reverse confusion can never be actionable under § 43(a).

The court finds, however, that even if reverse confusion is actionable under § 43(a), Faberge is entitled to summary judgment on Victory's claims of both direct and reverse confusion, because Victory has failed to establish that a genuine issue of material fact exists for either claim.

### Likelihood of Confusion

█ For both direct confusion and reverse confusion claims, the test of trademark infringement is likelihood of confusion. *Toho Co., Ltd. v. Sears, Roebuck & Co.,* 645 F.2d 788, 790 (9th Cir.1981); *Big O Tire Dealers v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365, 1371 (10th Cir.1977). Among the factors to be considered in determining likelihood of confusion are the type of the mark, the similarity in design, similarity of products, identity of retail outlets and purchasers, identity of advertising media, defendant's intent, and actual confusion. *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 381–82 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

█ The strength or weakness of a trademark will define the scope of protection to be accorded the mark against confusing similarity of other marks. *Westward Coach Manufacturing Co. v. Ford Motor Co.,* 388 F.2d 627, 634 (7th Cir.),

*cert. denied* 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968); 3 Callman, *supra,* § 20.43. The weaker the mark, the less the likelihood of confusion, and therefore the more limited the protection available. *Id.* This protection may extend only to similar goods similarly marketed. *Id.* Moreover, the use of a strong house mark virtually precludes confusion between similar marks. 3A Callman, *supra,* § 20.43. And, when the infringement arises from use of the mark in connection with noncompeting goods, only strong marks will be protected against infringement. 3A Callman, *supra,* § 20.43; *Westward Coach,* 388 F.2d at 634.

This action presents a classic case of a weak mark entitled to protection only for similar goods, akin to the facts in *Westward Coach.* In *Westward Coach,* the plaintiff, a manufacturer of travel trailers sold under the trademark "Mustang", sought to enjoin Ford from using the "Mustang" mark on its automobiles, alleging both direct and reverse confusion. The court held that because of the extensive use of the "Mustang" mark for a variety of products, plaintiff's mark was weak and could not be extended protection outside the trailer industry. 388 F.2d at 632. The court also concluded that there could be no confusion as to the origin of the well-known defendant's goods, and that any confusion as to the source of the goods of the little-known plaintiff was within the risk plaintiff took in developing a weak trademark. *Id.*

This case is similar to the *Westward Coach* case in several ways. First, in this case, as in *Westward Coach,* there is no likelihood of confusion as to the source of defendant Faberge's goods. All of Faberge's Cellini products prominently display Faberge's house mark, thereby eliminating any confusion as to the source of the goods. *See* 3A Callman, *supra,* § 20.-43. The Faberge mark is also prominently displayed on all advertising of Faberge's Cellini line. Victory has failed to produce any evidence to establish a genuine issue of material fact as to whether there is any direct confusion, i.e., confusion as to the source of the defendant Faberge's goods.

The court therefore concludes that, as in *Westward Coach,* there is no likelihood of direct confusion in this case.

Also similar to *Westward Coach,* the plaintiff in this case has chosen a weak mark to associate with its goods. The name Cellini, a proper surname and the name of a famous Italian sculptor and metalsmith of the 14th century, has been used extensively throughout the country in connection with a wide variety of goods. The Cellini mark has been federally registered 14 times for use with a host of goods including piece goods, vermouth, accordians, women's shoes, olive oil, jewelry of all types, men's overcoat, topcoats and suits, decorative finish and coating applied to cabinet hardware parts, vases, bowls, pitchers, pigments and eyewear. The name Cellini has also been federally registered for use in combination with other words for various types of timepieces ("Benvenuto Cellini"), men's, women's, boys' and girls' clothing ("Marco Cellini"), flatware ("Cellini Romanesque"), knitwear ("Mario Cellini"), and shirts and blouses ("Biandi Cellini").

Thus, as in *Westward Coach,* Victory's mark has been used extensively in connection with a wide range of goods and is therefore a weak mark. As such, Victory's mark is entitled to protection only against use by others in similar goods. Faberge has used the Cellini mark at issue in this case only on men's colognes, soaps and other toiletries, goods that are completely unrelated to the tobacco, pipes, and other smoking paraphernalia sold under the Cellini mark by Victory. Therefore, as in *Westward Coach,* Faberge's use of the Cellini mark is outside the scope of protection afforded Victory's weak mark. Consequently, under *Westward Coach,* summary judgment could be granted in this action on this basis alone.

In addition, an examination of the other traditional factors for determining likelihood of confusion also demonstrates that there is no likelihood of confusion as to the source of the plaintiff's goods, *i.e.,* no like-

lihood of reverse confusion. First, as noted above, the goods sold by Victory are not related, and they do not compete in the marketplace.[5] The products have entirely different properties and uses, and Victory has introduced no evidence to show that purchasers would substitute the purchase of one product for the other.

Second, the retail outlets for the goods are entirely different. Victory distributes primarily through its sole suburban retail store and through catalog sales, while Faberge distributes through large retail stores across the nation. Third, entirely different methods of advertising are used by each. Victory advertises primarily in the yellow pages of the local telephone directories and in local newspapers at a cost of approximately $15,000 per year. Faberge, on the other hand, has used high-cost massive multi-media national advertising campaigns to sell its Cellini line, including ads on television, radio, and in national magazines and newspapers.

Fourth, as noted above, the Faberge house mark is prominently displayed on all Faberge products and in all advertising of Faberge products, thereby significantly decreasing any likelihood of confusion about the source of either Victory's or Faberge's products. *See* 3A Callman, *supra*, § 24.03.

Next, the court notes that Victory has proffered no evidence of intent by Faberge to infringe on Victory's mark. To the contrary, evidence produced by Faberge demonstrates that there was no such intent.

Finally, the court finds that there is no evidence of actual confusion which raises a genuine issue of fact on the question of likelihood of confusion. Although evidence of actual confusion can be highly probative of likelihood of confusion, isolated or minor instances of actual confusion do not support a finding of likelihood of confusion. *Harad v. Sears, Roebuck & Co.*, 204 F.2d 14, 19 (7th Cir.1953); *Santucci Construction Co.*, 200 U.S.P.Q. 783 (N.D.Ill.1978). Surveys and questionnaires of consumers are generally considered the best evidence of actual confusion. 3A Callman, *supra*, § 20.63 at 368–69. Individuals may testify as to whether they were in fact confused. However, letters and affidavits from individuals who are not available for cross-examination are generally inadmissible, and hearsay reports with respect to the likelihood of confusion, especially those originating with employees of the plaintiff, are incompetent as evidence. *Id.*

In this case, no survey or questionnaire evidence has been presented by Victory to show actual confusion. Victory offers only an affidavit of Elliot Silbur, a co-owner of Victory, in which he states that 25 persons made statements during a three-month period evidencing some confusion with regard to Victory and Faberge. Attached to the affidavit is an exhibit listing 25 names and a short statement of the alleged confusion of each. Careful review of these unsworn statements reveals that a number of them do not in fact evidence confusion as to the source of either product.[6] Moreover, this list of statements is merely attached as an exhibit to an affidavit. No sworn affidavits of persons listed in the exhibit were submitted to the court by Victory. Without survey or questionnaire evidence, or affidavits of individuals showing actual confusion, Silbur's affidavit alone is not sufficient to raise a genuine issue of material fact regarding actual confusion.

---

5.  As noted above, Victory sells pipes, aromatic tobaccos, leather pouches, "Insta Pipe Nest" and "Insta Cake" under the Cellini trademark. These are products listed in Victory's answer to Faberge's Interrogatory No. 3 asking Victory to itemize products sold under or advertised by the Cellini trademark. Conspicuously absent from the list of products is any mention of body fragrances sold under the Cellini mark. Although Victory apparently now asserts that it has occasionally stocked a very small amount of body fragrances, there is no evidence that these fragrances were ever sold under the Cellini trademark. In any event, this does not raise a genuine issue of material fact affecting the court's decision.

6.  For example, the list included the following statements: "Thought it was a pipe commercial." "Made me think of another one." "Ridiculous advertising."

In light of all of these factors, the court finds that Victory has failed to raise a genuine issue of material fact regarding the likelihood of confusion, and that Faberge has established that there is no likelihood of confusion, direct or reverse, as a matter of law. Faberge is therefore entitled to summary judgment on Count I of Victory's complaint under § 43(a) of the Lanham Act.

### Count II

In Count II, Victory incorporates by reference the allegations in Count I of its complaint, and alleges that Faberge has violated Victory's rights under the Illinois common law of unfair competition. This allegation raises the issue of whether the Illinois common law of unfair competition recognizes a cause of action for reverse confusion. No Illinois Court has addressed this issue directly. This court need not divine the direction Illinois courts would take in this issue, however, because even if Illinois courts held reverse confusion could be actionable, the same principles applied above for Count I would govern the court's analysis. Therefore, for the reasons stated above with regard to Count I, the court finds that, even if reverse confusion is actionable under some circumstances under Illinois common law, Victory has failed to establish a genuine issue of material fact regarding the likelihood or either direct or reverse confusion that would be actionable. Accordingly, Faberge is entitled to summary judgment on Count II.

### Count III

In Count III, Victory claims that Faberge has violated the Illinois Anti-Dilution Act, Ill.Rev.Stat. ch. 140, § 22, alleging that Faberge's use of the Cellini mark unlawfully dilutes the distinctive quality of Victory's mark. The Anti-Dilution Act is designed to protect strong marks from dilution when the other user is not in competition with the plaintiff and thus no likelihood of confusion will result. *Filter Dynamics International, Inc. v. Astron Battery, Inc.*, 19 Ill.App.3d 299, 311 N.E.2d 386, 398 (1974). *Edgewater Apts. Corp. v. Edgewater Beach Mgmt. Co.*, 12 Ill.App.3d 526, 299 N.E.2d 548, 557 (1973). As Professor McCarthy notes, "To save the dilution doctrine from abuse by plaintiffs whose marks are not famous and distinctive, a large neon sign should be placed adjacent wherever the doctrine resides, reading: "The Dilution Rule: Only Strong Marks Need Apply." 2 J. McCarthy, *Trademarks and Unfair Competition* § 24:14 at 162. As discussed above, Victory's mark is weak and therefore not entitled to protection against non-competitive uses under the Illinois Anti-Dilution Act.[7] Faberge is therefore entitled to summary judgment on Count III.

### Count IV

Finally, in Count IV, Victory alleges that Faberge has violated the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½ § 312. This act incorporates the principles of Illinois common law trademark infringement. *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir.1976); *McDonalds Corp. v. Gunvill*, 441 F.Supp. 71, 75 (N.D.Ill. 1977), *aff'd mem.*, 622 F.2d 592 (7th Cir. 1980). Therefore, for the reasons stated above with regard to Count II, Faberge is entitled to summary judgment on Count IV.

### Conclusion

Accordingly, for the reasons set forth above, Faberge's motion for summary judgment is granted.

---

**7.** As noted by Faberge, reverse confusion is the antithesis of dilution. The purpose of the Anti-Dilution Act is to prevent an infringer from associating his goods with the plaintiff's strong mark, not to prevent the public from associating the plaintiff's goods with the defendant's strong mark.