U-HAUL INTERNATIONAL, INC., A Nevada Corporation, and U-Haul Co. of Michigan, a Michigan Corporation, Plaintiffs,

v.

Ed KRESCH, Simon Kresch, Neu-Monics and Centre 40 Trucking, Jointly & Severally, Defendants.

Civ. A. No. 94-74341.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 7, 1995.

Susan Jones, Jeffer Mangels, Los Angeles, CA, Steven Galbraith, Southfield, MI, for plaintiff U–Haul Co.

Julie A. Greenberg, Birmingham, MI, for defendant Centre 40 Trucking.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiffs filed this action seeking damages and an injunction for defendants' alleged use of plaintiffs' trademarks and unfair competition. The court previously denied a motion for summary judgment made by defendants. Before the court is defendants' renewed motion for summary judgment. The court will deny defendants' motion because discovery is not complete and many material factual issues remain in dispute.

### I. Facts

The U–Haul Rental System, established in 1942 as a small truck and trailer operation, has continually expanded in size and sales revenue to the point today where this system includes over 1200 company owned U–Haul centers and 12,000 independent dealers throughout Canada and the United States. Plaintiffs have registered the "U–Haul" mark with the United States Patent and Trademark Office. Plaintiffs have spent millions of dollars worldwide in advertising and promoting the service mark U–HAUL.

For the past nine years, U–Haul has promoted the number 1–800–GO–U–HAUL (1–800–468–4285) as a nationwide toll free telephone number for reservation services. This type of number is called a vanity number. The complaint also alleges that U–Haul's annual budget for this number is approximately $3.5 million. According to the affidavit of Ed Kresch, submitted to the court on April 25, 1995, Centre 40 Trucking subscribed to the following telephone numbers on the following dates:

| Telephone Number | Date |
| --- | --- |
| 408–4255 | 07/29/94 |
| 468–4225 | 12/23/93 |
| 408–4285 | 12/09/93 |

These numbers can be translated into the following alphanumeric representations: (1) G[zero]–U–HALL; (2) GO–U–HALL; and (3) G[zero]–U–HAUL. These numbers are very similar to plaintiffs' vanity number. Numbers which are similar to a vanity number and are often misdialed by customers attempting to reach a vanity number are called complementary numbers.[1]

In January 1994, plaintiff U–Haul Co. of Michigan entered into a contract with defendants Ed Kresch and Centre 40 Trucking to allow Centre 40 Trucking to conduct operations as a U–Haul dealership. According to the affidavit of Ed Kresch, submitted in support of defendants' renewed motion for summary judgment, Kresch contacted Mr. Jody Keasler, an area field manager for U–Haul in Detroit, in late 1993. Kresch states that he discussed possible participation in U–Haul's Remote Reservation Program and disclosed to Keasler that he was interested in utilizing an 800 telephone number to which he subscribed. According to Kresch, he disclosed to Keasler that the number was one digit away from U–Haul's 800–GO–U–HAUL number. According to Keasler's affidavit, submitted in opposition to defendants' renewed motion for summary judgment, Keasler states that Kresch never told him that any 800 number Kresch intended to use was

---

1. During oral argument, plaintiffs suggested that defendants may have fifteen other numbers which are similar to U–Haul's vanity number.

a single digit different from U–Haul's 1–800–GO–U–HAUL number. Further, Keasler states that he never discussed any 800 number in connection with Kresch's dealership.

According to Kresch, he discussed his goal of operating a dealership strictly by telephone, without managing a physical store location. Keasler said that he was told by representatives of U–Haul International in Arizona that in order to market remote reservations using Kresch's 800 telephone number, U–Haul would require that Kresch open a physical location. Kresch selected a physical location in Roseville, Michigan in January 1994. According to Kresch, he discussed with Lyjak, the U–Haul area field manager for that location, his intention of using his 800 number, which was a single digit different from U–Haul's 1–800–GO–U–HAUL number. Kresch states that Lyjak did not object to that proposed use. According to Lyjak's affidavit, submitted in opposition to defendants' renewed motion for summary judgment, Lyjak met with Kresch and explained that Kresch would make a higher commission for each rental if he opened a physical location, but a physical location was not necessary. According to Lyjak, Kresch mentioned a plan to use an 800 number in connection with his dealership. However, Lyjak states that Kresch never told him at any time that the 800 number Kresch intended to use was a single digit different from U–Haul's 1–800–GO–U–HAUL number. Further, Lyjak states that the two never discussed what specific 800 number Kresch intended to use.

According to Kresch, months after Centre 40 began doing business as an authorized U–Haul dealer, Lyjak contacted Kresch to inform him that U–Haul International was concerned about potential trademark problems arising out of Centre 40's use of the 800 telephone number. Kresch assured Lyjak that no alphanumeric promotion of that telephone number had ever been or would ever be made. According to Kresch, Lyjak indicated that Centre 40's continued use of the 800 telephone number in connection with the dealership would be conditioned on Kresch's promise to answer the telephone by clearly identifying Centre 40 Trucking and by read-

ing a specific script which Lyjak suggested. The script read as follows:

> Thank you for calling Centre 40 Trucking, we are an authorized U–Haul dealer. We rent a full line of trucks, trailers, and towing equipment available for pick up at more than 10,000 locations throughout the United States and Canada including Alaska and Hawaii. If you are calling to make a one way reservation and you have a credit card, please press 8. If you are calling to rent equipment for a local move or you do not have a credit card, please consult your local yellow pages for a U–Haul dealer or center near you. Thank you.

According Lyjak, he did not know about defendants' use of the 800 numbers until late July, 1994, when he was informed of the numbers by the President of U–Haul Co. of Michigan, Mr. Gilray. Lyjack states that before he found out about the 800 numbers, he became concerned that Kresch's employees were answering the phone as "U–Haul" even though defendants were a dealer rather than a U–Haul owned establishment. Therefore, Lyjak requested that Kresch instruct his employees to answer calls by identifying themselves as "Centre 40 Trucking, an authorized U–Haul dealer." Lyjak states he never dictated any script to Kresch. Further, Lyjack states that after Gilray informed him of the defendants' 800 number, Lyjak confronted Kresch, who claimed that he did not know what his 800 numbers spelled. According to Lyjak, Kresch finally admitted that the numbers were one digit different from U–Haul's national number and Lyjak told Kresch that if he did not stop using those 800 numbers, U–Haul would be forced to terminate his dealership. Lyjak states that Kresch refused to give up the 800 numbers and his dealership was terminated.

On October 24, 1994, plaintiffs sent a letter to defendants, in which plaintiffs requested that defendants cease using plaintiffs' trademarks and the telephone number "800–GO–U–HALL." Defendants continued to use the telephone number 800–468–4255. On October 27, 1994, U–Haul, Inc. filed a complaint for trademark infringement and an ex parte motion seeking a temporary restraining or-

der barring defendants' use of plaintiff's trademarks and the telephone number "800–GO–U–HALL." On October 28, 1994, this court denied the ex parte motion. On November 2, 1994, U–Haul International, Inc. filed a verified first amended complaint and a second ex parte motion requesting that the court temporarily restrain defendants from using the "800–GO–U–HALL" telephone number. On November 3, 1994, the court granted plaintiff's motion based on facts in plaintiff's verified complaint and attached affidavits.

The court heard oral argument on plaintiff's motion for a preliminary injunction on November 10, 1994 and four days later the court denied the motion. On February 17, 1995, the court denied defendants' motion for summary judgment and plaintiffs' motion for reconsideration of their motion for preliminary injunction in light of newly discovered facts. Plaintiffs' second amended complaint[2] alleges trademark infringement in violation of 15 U.S.C. § 1114(1)(a) and false descriptions and representations in violation of 15 U.S.C. § 1125(a) and several state law claims. The state law claims were dismissed by the court. Defendants filed counterclaims based on state law. The counterclaims were dismissed by the court. The discovery cutoff date is August 15, 1995. Before the court is defendants' renewed motion for summary judgment.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56,

**2.** With the second amended complaint, U–Haul International, Inc. added U–Haul Co. of Michi-gan as a second plaintiff.

89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings. *Id.*

### III. Analysis

Section 1114(1)(a) provides in pertinent part:

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale ... or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

Section 1125(a) states in pertinent part:

Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

(A) is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Defendants, in their renewed motion for summary judgment, argue that any use of plaintiffs' trademarks and service marks oc-

curred with plaintiffs' consent when Centre 40 Trucking was an authorized U–Haul dealer and that the use of the telephone numbers does not constitute trademark infringement or false descriptions and representations. Plaintiffs respond by arguing that discovery has not finished and that defendants have prevented plaintiffs from deposing defendants, and from obtaining crucial documents such as defendants' phone bills and advertisements of their telephone numbers. Plaintiffs also argue that defendants have been unable to meet their burden of showing that no material dispute of facts exists.

### A. Before Termination of Dealership

■ U–Haul established its 800–GO–U–HAUL number to serve customers for one-way truck rental reservations around the country. Through this number, and the system it accesses, U–Haul controlled the quality of the service it provided. U–Haul could ensure that its customers' orders were processed with few errors and maximum efficiency. "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Products Co., Inc. v. Shoe World,* 806 F.2d 392, 395 (2nd Cir.1986), *cert. denied,* 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987). Plaintiffs argue that while defendants operated a U–Haul dealership, defendants answered their complementary numbers by misrepresenting to customers that defendants were U–Haul International rather than a U–Haul dealer. As a result, defendants effectively removed control, including quality control, of the reservation system from U–Haul.

If discovery shows that callers attempted to call 1–800–GO–U–HAUL, reached defendants' complementary numbers by mistake, and were mislead into thinking that they had reached 1–800–GO–U–HAUL, then defendants are liable for trademark infringement. In *Lamothe v. Atlantic Recording Corp.,* 847 F.2d 1403 (9th Cir.1988), co-authors of several songs had their names omitted as contributors to the songs. The court determined that the policies of Lanham Act § 43(a) were to ensure that "the consuming public receives

full information about the origin of the good.... An incomplete designation of the source of the good or service is no less misleading because it is partially correct." *Id* at 1407–08 (citing *Smith v. Montoro,* 648 F.2d 602 (9th Cir.1981)); *see also Gilliam v. American Broadcasting Companies,* 538 F.2d 14, 24 (2nd Cir.1976) (recognizing a § 43(a) claim against ABC for broadcasting a heavily edited version of a copyrighted Monty Python piece without the group's permission, and holding that it is "sufficient to violate the Act that the representation of a product, although technically true, creates a false impression of the product's origin." (citation omitted)).

It was defendants' duty to inform the customer that they had reached an authorized U–Haul dealer rather than U–Haul International. Defendants argue that they did inform customers that they were a U–Haul dealer. Plaintiffs provide the deposition of one customer who states that he dialed defendants' number and "[t]he lady on the other end said U–Haul rentals." Jackson Dep. at 8. Then she said, "can I take a reservation for you?" Jackson Dep. at 8. Clearly it is possible that defendants mislead customers into thinking that they had reached U–Haul and not a U–Haul dealership.

Defendants argue that Mr. Jackson's deposition does not show that defendants confused the public because Mr. Jackson had worked at U–Haul previously and is one of the rare customers who would know the inner procedures at U–Haul. The issue in this portion of the case, however, is whether plaintiffs authorized defendants to use their trademark in the manner that defendants used it. A party licensed to use a trademark in certain situations may be liable for Lanham Act violations if that party oversteps the bounds of its authority. *Franchised Stores of New York, Inc. v. Winter,* 394 F.2d 664, 668 (2nd Cir.1968). Even if the goods are identical, if they are sold in an unauthorized manner, defendants can be liable under the Lanham Act. *Babbit Electronics, Inc. v. Dynascan Corporation,* 38 F.3d 1161, 1180 (11th Cir.1994). In this respect, defendants can be compared to purveyors of "gray goods"—that is, products authorized

under the plaintiff's mark for production and sale abroad that are brought into this country in violation of such understanding. In *Societe Des Produits Nestle v. Casa Helvetia, Inc.,* 982 F.2d 633 (1st Cir.1992), plaintiffs had authorized defendants to produce and sell chocolates in Venezuela. However, when defendants imported those same chocolates to Puerto Rico, the Court granted an injunction against them, noting that, although the goods were genuine products authorized by Nestle, their importation might cause confusion or deceive purchasers. *Id.* at 640. The court found that Neste was unable to control the quality of the chocolate made by the Venezuelan affiliate, whose quality control methods were substantially different from its own. In this case, customers could clearly misdial the complementary numbers and assume that they had reached 800–GO–U–HAUL. If discovery shows that plaintiffs clearly informed defendants that defendants were required to state that they were a U–Haul dealership, then defendants may have exceeded the bounds of their authorized use of plaintiffs' trademark and would be liable for trademark infringement.

**B. After Termination of Dealership**

Plaintiffs argue that defendants use of the complementary numbers after defendants' dealership agreement with U–Haul was terminated constitutes violations of trademark infringement and unfair competition. Among the earlier pleadings filed in this case, it was clear that at least one complementary number played a message asking customers to support defendants by calling Ryder, a competitor of U–Haul. Further, plaintiffs allege that one of the messages played to customers who dialed the complementary number suggested that U–Haul was out of business. Defendants argue that use of the complementary numbers does not constitute trademark infringement or unfair competition because defendants never used an alphanumeric in any advertisements.

There are two cases which the court finds are relevant to its analysis in the instant action. In *Holiday Inns, Inc. v. 800 Reservation, Inc.* 838 F.Supp. 1247 (E.D.Tenn. 1993), plaintiff Holiday Inns was granted a

preliminary injunction to prevent defendant 800 Reservation Inc. from using a telephone number similar to Holiday Inns' number. Plaintiff Holiday Inns utilized the vanity number 1–800–HOLIDAY, or 1–800–465–4329. Defendant in *Holiday Inns* was a travel agency who bought the complementary number for Holiday Inns, 1–800–H(zero)LIDAY and other businesses in order to book customers for these businesses. Defendant did not engage in any advertising of the complementary phone number. Plaintiff sued defendant alleging trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125. The court explained that the standard for relief under both counts was substantially identical. The plaintiff must show likelihood of confusion. *Id.* at 1253 (citing *Wynn Oil Co. v. Thomas,* 669 F.Supp. 831, 834 (M.D.Tenn.1986), *rev'd in part and aff'd in part,* 839 F.2d 1183 (6th Cir.1988)). The court acknowledged an eight factor test for determining whether there is a likelihood of confusion, but explained that defendant's intent is critical. *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir.1982), *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). The case was unusual because defendant admitted that he purchased the complementary number with the intent to derive benefit from Holiday Inns' reputation.

In *Holiday Inns,* defendant argued that there was no use of plaintiff's trademark and therefore the court need not reach the issue of likelihood of confusion. The message provided by defendant explained that customers had misdialed and had not reached Holiday Inns. Then defendant offered customers options for making reservations at Holiday Inns and other hotels. The court found that the options defendant provided from Holiday Inns were more costly than if customers had dialed directly to a Holiday Inns telephone line. The court held that "[d]efendants' use of plaintiff's mark involves more than the likelihood of confusion—our present technology allows defendants to use plaintiff's mark in such a way that they can anticipate actual confusion with absolute accuracy and can profit accordingly." The court found that defendant's "nefarious use of plaintiff's mark must therefore be enjoined" because it constitutes both trademark infringement and unfair competition. *Id.* at 1255.

Another case which the court finds helpful for its analysis is *Chicago Blackhawk Hockey Team v. Madsen,* No. 90–C–5833, 1991 WL 18411, 1991 U.S.Dist. LEXIS 1720 (N.D.Ill. Feb. 13, 1991). In *Madsen,* defendant Madsen owned and managed several sports phone lines. One of the lines had the phone number 736–HAWK (4295). The idea of incorporating the mark "hawk" in the hotline phone number was Madsen's. The Blackhawks reimbursed Madsen for all installation line charges and other phone line charges incurred in operating the hotline. The Blackhawks conducted extensive promotion and advertising of the hotline. On limited occasions, the Blackhawks requested that Madsen include certain information on the hotline and Madsen included the requested information without objection. In 1990, the Blackhawks terminated Madsen's services and requested that he stop operating the 736–HAWK hotline. Madsen refused. The Blackhawks immediately sought injunctive relief to stop Madsen's use of their mark and the 736–4295 phone line. The magistrate recommended that the injunction be granted.

In *Madsen,* defendant did not argue that the court should permit him to use plaintiff's marks in promoting his hockey line, including the alphanumeric 736–HAWK. Defendant also did not dispute the recommendation that he be prohibited from identifying his hockey line as being authorized by or associated with the Blackhawks. The only dispute was whether the Blackhawks had a protectable mark in 4295 being used as a phone number for a hockey line. The court found that the Blackhawks had failed to address the legal issue of how they could obtain control over the property of another. In making its decision, the court analogized the case to cases in which a franchisee discontinues being licensed by the franchisor, but continues to operate the same type of business under a different name at the same location. The court found that Madsen's use of the 736–4295 number was not significantly different than continuing to operate at the same physical location. The court concluded that just because "the parties' prior relationship has

resulted in identification of 736–4295 with the Blackhawks [that fact] is not a wrongful act upon which plaintiff can base its unfair competition claim." *Id.*

### 1. Trademark Infringement

■ At this time, there is no proof that defendants have ever promoted the complementary numbers by using an alphanumeric. Defendants legitimately bought those numbers on the open market. Those numbers now belong to the defendants. If plaintiffs had been concerned about the potential use of the complementary numbers by others, plaintiffs had two alternatives. Plaintiffs could have bought the complementary numbers themselves. Plaintiffs also could have chosen not to advertise their number by using an alphanumeric and thus could have avoided the potential problem of complementary numbers. As in *Madsen*, plaintiffs have been unable to provide any authority that they are entitled to defendants' property merely because the numbers are complementary to plaintiffs' vanity number. In order to violate section 1114, the court must find that defendants used, without the consent of the registrant, a "reproduction, counterfeit copy or colorable imitation of a registered mark." This court finds that under the current facts before the court, there has been no actual trademark infringement by defendants' use of the complementary numbers.

The court must however deny defendants' summary judgment on this issue because discovery is not complete. Plaintiffs have complained that defendants have been stalling discovery. At this time, plaintiffs have still not been provided with the advertisements of defendants' complementary numbers. If defendants did use an alphanumeric in their advertisement, then the court would find that defendants violated section 1114. Further, defendants have failed to provide the phone bills which the magistrate judge ordered defendants to provide. It is possible that customers may provide information about whether defendants had advertised their complementary numbers using an alphanumeric. Thus, defendants' renewed motion for summary judgment must be denied.

### 2. Unfair Competition

■ In contrast to section 1114, section 1125 does not require plaintiffs to prove that defendants used plaintiffs' trademark. Section 1125(a) prohibits the use of "any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion ..." Section 1125 created a federal law of unfair competition, under which a variety of business products, practices, trade names, trademarks, etc. are deemed worthy of protection. *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, 646 (6th Cir.1982), *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). Section 1125 was intended to eliminate deceitful practices in interstate commerce. *Bernard Food Industries, Inc. v. Dietene Company,* 415 F.2d 1279, 1283 (7th Cir.1969), *cert. denied,* 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1969).

In order to succeed in this action, the plaintiffs will have to prove that confusion existed between their vanity number and defendants' complementary number. *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, 651 (6th Cir.) *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). Defendant's intent is critical because if defendants' behavior is attempting to derive benefit from the reputation of the plaintiff, "that fact alone may be sufficient to justify the inference that there is confusing similarity." *Id.* at 648 (quoting *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 703–704 (5th Cir.1981) *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982)). Furthermore, direct testimony is not necessary to establish wrongful intent, it can be inferred from defendants' actions. *WSM, Inc. v. Tennessee Sales Co.,* 709 F.2d 1084, 1087 (6th Cir.1983). In this case, defendants clearly attempted to catch customers who were calling U–Haul at U–Haul's highly advertised vanity number. Evidence has already been presented to the court that defendants' complementary numbers played messages requesting that customers send their business to Ryder, a competitor of U–Haul. Plaintiffs would be entitled to damages if

they lost business due to defendants' use of the complementary lines.[3]

This action is quite different than the situation in *Madsen*. In *Madsen*, plaintiffs not only knew of the telephone number to which defendant subscribed, but paid for defendant's use of the number. In the instant action, U–Haul alleges that it did not know or sponsor defendants' use of the complementary numbers. In *Madsen*, plaintiffs' promotions and advertisements were intended to promote the number at issue. In this action, plaintiffs advertisements were to promote their own vanity number and defendants surreptitiously profited from defendants advertisements, as in *Holiday Inns*. In *Madsen*, plaintiffs intended that defendant would benefit from the number before termination of the agreement. Here U–Haul alleges that it did not know, or expressly intend that defendant reap a profit from the complementary numbers. For these reasons, the court finds that the facts of this case are not similar to the facts in *Madsen*. If the facts alleged by plaintiffs are true, then defendants' actions do constitute unfair competition.[4]

## II. Sanctions

█ The court denied defendants' first motion for summary judgment because discovery was not complete. On May 25, 1995, discovery was extended by order of this court on a motion filed by plaintiffs requesting such relief. Defendants had not filed a response in opposition to plaintiffs' motion requesting extension of discovery. The new discovery cut-off date is now August 15, 1995. Nevertheless, defendants filed their renewed motion for summary judgment on May 30,

1995.[5] Plaintiffs request that defendants be sanctioned in the amount of $1,500.00 for bringing this motion because discovery has not been completed, and defendants have refused to cooperate in discovery. Plaintiffs' attorney submits that her rate is $160 per hour and she spent in excess of 10 hours working on this motion. The court finds the request for sanctions reasonable. Therefore, the court will order sanctions in the amount of $1,500.00.

### ORDER

Therefore, it is hereby **ORDERED** that defendants' motion for summary judgment is **DENIED without prejudice.**

It is further **ORDERED** that defendants are ordered to pay to plaintiffs the amount of $1,500.00.

**SO ORDERED.**

---

3. Plaintiffs present the affidavit of expert David Yerkes, who states that defendants' message transmitted to customers was misleading and damaging to U–Haul because it indicated that U–Haul terminated the dealership "without cause." Defendants argue that they were merely explaining the situation as it occurred. The court has already determined that summary judgment will be denied, and therefore the court need not address this issue at this time.

4. The court notes that defendants now run a "phone sex" line on their 800–408–4255 and 800–408–4285 line. This information was provided to the court in another motion. Defen-

dants have not argued that plaintiffs are not entitled to prevent defendants from using their complementary numbers because the numbers now operate as "phone sex" lines. Therefore, the court cannot address this argument.

5. Defendants allege in their reply that they received the court's amended discovery schedule after filing the renewed motion for summary judgment. If this is true, then defendants should have immediately withdrawn their motion and waited to refile it after August 15, 1995. Instead, they chose to pursue the motion, required plaintiffs to respond and required the court's time to address this motion.